# CASES

IN THE

# ·APPELLATE COURTS OF ILLINOIS.

THIRD DISTRICT—NOVEMBER TERM, 1885.

## THE PEOPLE EX REL. JOHN S. LYMAN

v.

## THE OHIO AND MISSISSIPPI RAILROAD COMPANY.

*Railroad Fences—Objects of—Construction of Sec. 3, Act of March 31, 1874—Location to be on Line of Right of Way.*

1. The words, "on both sides of its road," as used in Sec. 3, Act of March 31, 1874, relating to fencing railroads, mean the margin or border of the entire grounds used as a roadway.

2. Where an adjoining owner has notified a railroad company, under said section, to fence its track, it can not construct a fence within its right of way and prevent him from connecting his fences with the fence so con structed, the incidental benefit arising to land owners being within the intention of the act, although its main object is the protection of the traveling public.

3. In the construction of a statute its language should be given, when the sense will bear it, its usual and popular meaning.

[Opinion filed February 26, 1886.]

IN ERROR to the Circuit Court of· Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Statement of the case, by CONGER, J. The plaintiff in error

(23)

assigns as error the judgment of the Circuit Court in sustaining the demurrer to his petition and dismissing the same. The petition sets forth in substance that the O. & M. Railroad Company some years since constructed their railroad through relator's farm, leaving part on each side of the right of way; that he never waived nor compromised with the railroad its duty to construct fences along its sides where they pass through his farm; that they had been operating their road through his farm several years, but had not built the fences required by law along the sides of their right of way; that relator had given the thirty days notice required by the statute, requesting the railway company to construct a fence on the south side of its road where the same ran through his farm; that the company had neglected and refused to do this, but had required of relator that he help pay for the fence, and refusing to do so threatened to construct the fence which he had notified them to build on the side of their road ten feet inside their right of way, and would then forbid his crossing their ten feet of right of way, thus thrown out to connect his fences with theirs; that he refused to comply, and thereupon the company had built a fence ten feet inside their right of way, and had then cut away and removed its hedge and fence at the ends of petitioner's said tract of land, where said road enters and goes out of the same, and between said fence which it had so erected and petitioner's land, thereby exposing petitioner's said land to the trespassing of stock from the highway at one end and the egress of petitioner's stock upon said highway, and also exposing petitioner's stock to said company's track at the other end of said fence, and then forbade petitioner from inclosing his said land upon said new fence being erected by said company, and forbade relator entering upon their ten feet for the purpose of inclosing his fences upon theirs. The petition avers it is still the duty of the railway company to build and maintain a fence upon said line as required by the " act " and the notice.

These averments of the petition are all admitted by the demurrer filed by the railway company. The petition prays for a peremptory writ requiring the company to erect and main-

tain a fence upon said line as required by said law and notice. The question presented is, can a railroad company, after it has been notified by an adjoining owner, under Sec. 3 of the Act of the Illinois Legislature, entitled "An Act in relation to fencing and operating railroads," approved March 31, 1874, to construct a fence on the side of its road where the same passes through his farm, build the fence anywhere except on the line between its right of way and the adjoining owner's land?

Messrs. CONNELLY & MATHER, for plaintiff in error.

The meaning and intention of Sec. 1 of the Act of March 31, 1874, in relation to fencing and operating railroads, was construed by the Supreme Court in W., St. L. & P. R. R. Co. v. Zeigler, 108 Ill. 304.

The court in that case construed the phraseology requiring railroads to erect and maintain fences on both sides of their roads, to mean on the dividing line between the right of way and the farmer's land.

The question was raised under precisely the same sort of a notice given, and precisely the same provision of the statute as in this case.

In that case the Supreme Court held Zeigler could not recover the penalty of double the value of the fence because he had not built the fence on the line.

Had relator in this case built a fence under this notice and placed it where the company have, ten feet inside their right of way, then under this provision of the statute, and this same notice, he could not recover because not having complied with the statute.

Can the railway company comply with the same law and the same notice by building the fence ten feet within their right of way instead of on the side, which the Supreme Court holds to mean on the line?

Fences are for the use of the adjoining proprietor, for the purpose of fencing his stock in and other stock on the right· of way out, as well as a police regulation for the benefit of the traveling public.   Chapin v. Sullivan R. R., 39 N. H. 53; Eames v. S. & L. R. R. Co., 98 Mass. 560; Enright v. S. F.

& S. J. R. R. Co., 33 Cal. 236; Berry v. St. L. & L. R. R. Co., 65 Mo. 172.

It is competent legislation to require railroads to use their capital to fence the lands of adjoining owners. Trice v. H. & St. J. R. R. Co., 49 Mo. 438.

Messrs. RAMSEY, MAXWELL & MATTHEWS, C. A. BEECHER, PERCY WERNER, and J. H. MATHENY, JR., for defendant in error.

Statutes requiring railroad companies to fence their roads, are upheld as regulations designed for the protection of the lives and property of the traveling public. O. & M. R. R. Co. v. McClelland, 25 Ill. 140; G. & C. U. R. R. Co. v. Crawford, 25 Ill. 529; P., D. & E. R. R. Co. v. Duggan, 109 Ill. 537; C., B. & Q. R. R. Co. v. Hans, 111 Ill. 114; I. & C. R. R. Co. v. Parker, 29 Ind. 471; Blair v. M. & P. du C. R. R. Co., 20 Wis. 254; Gilman v. E. & N. A. R. R. Co., 60 Me. 235.

The statutory obligation to fence, being a police regulation for the benefit of the general public, it is immaterial whether the owner of cattle injured in consequence of the failure to fence, be an adjoining proprietor or not, so far as the question of liability of the company for such injury is concerned. I. & C. R. R. Co. v. McKinney, 24 Ind. 283; Gilman v. E. & N. A. R. R. Co., 60 Me. 235; Rhodes v. U. I. & E. R. R. Co., 5 Hun, 344; McCall v. Chamberlain, 13 Wis. 637; M. & C. R. R. Co. v. Stephenson, 24 O. St. 48.

Therefore no peculiar protection or benefit to adjoining proprietors, as such, was intended.

The statute requiring railroad companies to fence their tracks is not for the purpose of protecting land owners from damage that might be done by stock getting on the right of way and thence to the adjacent crops. Its object was to prevent stock from coming on the railroad and being injured, and to prevent accidents likely to occur if stock were not fenced away from the track. P., D. & E. R. R. Co. v. Schiller, 12 Ill. App. 443.

The People v. The O. & M. R. R. Co.

CONGER, J.  The question presented by this record is, whether a railroad company, under the circumstances stated in the petition, and the laws of Illinois, in reference to fencing railroads, may build the fence required, anywhere except on the line between its right of way and the adjoining owner's land.

The portion of the section involved is: " That every railroad corporation shall, within six months after any part of its line is open for use, erect and thereafter maintain fences on both sides of its road, or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad (except at the crossing of public roads and highways and within the limits of cities and incorporated towns and villages) with gates or bars at the farm crossings of such railroad, which farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietors of the lands adjoining such railroad, etc."

What is the proper construction to be given the words " on both sides of its road," as used in the foregoing section ?  " In construing statutes we are required to give to language, when the sense will bear it, the usual and popular meaning attached to the words employed."  Stuart v. Hamilton, 66 Ill. 255.

Webster defines " side," to mean " The margin, edge, verge or border of a surface: the bounding line of a geometrical figure, as the side of a field."

We hold the meaning of these words, " on both sides of its road," to be the margin or border of the entire ground used as a roadway.  This gives certainty and completeness to all the sections in reference to fencing.

If railroads may construe this language to ˉmean any imaginary line between the track and the margin of the right of way, why may not the adjoining land owner do the same for the other sections providing for the building of " such fence" by adjoining proprietors, clearly refer to the same fence spoken of in section one?

It is not to be supposed this law was meant to produce such absurd consequences, but that from the first to the fourth sections, inclusive, the same fence and the same place, were meant.

In W., St. L. & P. Ry. Co. v. Zeigler, 108 Ill. 306, where the adjoining land owner intentionally built a fence two feet inside the company's right of way and sought to recover from the company, the court held he could not, and say: "To recover upon this penal liability of double the value of the fence, the statute should be strictly followed in the building of the fence. The fence should be such a one as the statute requires and authorizes, built in the mode the statute contemplates.

"Such a fence is one on the sides of the railroad. The fence in question was not built *on the side of the railroad*, but was intentionally built two feet inside the right of way, two feet *from the side of the road.* * * * To entitle to a recovery under this statute the fence must be built where the statute requires it should be, on the side of the railroad. It was not so built here."

It is urged by appellant that the benefit to the adjoining land owner of using the fence constructed by the railroad as a partition fence, was one of the objects to be accomplished by the law, while appellee insists that the only purpose intended was the protection of the traveling public, and the stock of the neighborhood through which the road passes.

The great and primary object of the statute was the increased safety to the traveling public, and the statute can be upheld only upon the ground of police regulations to more thoroughly secure such protection.

While the power of the Legislature to require railroad companies to make partition fences, as such, could not be sustained, we see no good reason why, in exercising its police power, by requiring railroad companies to protect the public by fencing their roads, the Legislature might not have had in contemplation also the incidental benefit arising to adjoining land owners by such fences being built upon the sides of the railroad, thereby enabling such adjoining land owners to join their fences to them and using them as partition fences.

It is also urged that in some cases there might be high embankments, deep cuts, or other physical conformation of the ground, making it difficult or impossible to comply with the law as we have construed it, and in such case a fence placed

anywhere upon the right of way which would keep animals off the track, would be a compliance with the spirit and intention of the law. There is no such difficulty, however, presented by this record, and hence it is not necessary to express any opinion as to how far such a state of facts might excuse a railroad from a compliance with the literal language of the statute.

We think the Circuit Court erred in sustaining the demurrer and dismissing the petition, and the judgment below will be reversed, and the cause remanded for further proceedings in accordance with the foregoing views.

*Reversed and remanded.*