WILLIAM H. FINCH *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

June 3, 1891.

Railway—Failure to Fence—Application of Statute.—*Gillam* v. *Sioux City & St. Paul R. Co.*, 26 Minn. 268, followed, to the effect that Gen. St. 1878, c. 34, § 57, creating a liability for railroad companies neglecting to fence their roads, applies to all railroads in the state.

Same—Injury to Farm—Measure of Damages.—*Emmons* v. *Minn. & St. Louis Ry. Co.*, 35 Minn. 503, and *Nelson* v. *Minn. & St. Louis Ry. Co.*, 41 Minn. 131, followed, to the effect that a railroad company neglecting to fence is liable for the diminution in the rental value of a farm through or along which it passes, caused by such neglect.

Expert Witness—Cross-Examination as to Qualification.—Though the court may, in its discretion, allow the opposing party to cross-examine an expert witness as to his qualifications before permitting him to give his opinion, such preliminary cross-examination is not a matter of right.

Same—Injury to Rental Value of Farm.—Practical farmers are qualified to give an opinion on the question to what extent leaving a farm unfenced will affect its rental value.

Verdict *held* justified by the evidence.

Action brought in the district court for Faribault county, to recover damages for failure of defendant to fence its railway through plaintiff's farm, thereby destroying its value for the purpose of raising stock on it, etc. At the trial before *Severance,* J., under instruction that the measure of damages was the diminution (if any) of the rental value of the farm, during the six years next before suit brought, by reason of the absence of fences, the plaintiff had a verdict of $900. The defendant appeals from an order refusing a new trial.

*Andrew C. Dunn,* for appellant.

*Lovely & Morgan* and *S. J. Abbott,* for respondent.

GILFILLAN, C. J. In *Gillam* v. *Sioux City & St. Paul R. Co.;* 26 Minn. 268, (3 N. W. Rep. 353,) Laws 1877, c. 73, § 1, amending Laws 1876, c. 24, § 4, the section so amended being section 57, c. 34, Gen. St. 1878, imposing on railroad companies liability for damages sustained by any person in consequence of failure or neglect to fence their roads, was held to be a police regulation, and to apply to all railroad companies, and to subject all companies, without regard to the provisions of their charters, to the same duties and liabilities in the matter of maintaining fences, cattle-guards, etc. If section 1 of the act of 1876 (Gen. St. 1878, c. 34, § 54) might, by reason of some of the terms used in it, be open to the suggestion that it was intended to apply only to railroads then existing, the provisions of section 4, as amended, (section 57, c. 34,) are broad and general enough to include all railroads, whether then existing or thereafter to be constructed. And we can conceive of no reason why the legislature should intend to restrict the operation of a general police regulation, like that in regard to fencing, to then existing railroads, and not to apply it to railroads that might in the future be constructed and operated. If any railroads did not come within the provisions of section 1, imposing the duty to fence, such duty was, as to such railroads, imposed by section 4, as amended in 1877.

Such was the effect of the decision in the case above referred to, the correctness of which we see no reason to question. In *Emmons* v. *Minn. & St. Louis Ry. Co.*, 35 Minn. 503, (29 N. W. Rep. 202,) and *Nelson* v. *Minn. & St. Louis Ry. Co.*, 41 Minn. 131, (42 N. W. Rep. 788,) it was decided that, when a railroad passes and is operated through or along-side of a farm, and the rental value of the farm is diminished by the failure of the railroad company to fence, it is liable, under the statute referred to, as damages, for the amount to which the rental value is thus impaired. The two points decided by the cases referred to—that is, that section 57 applies to all railroads, and that rental value may be taken as a basis for estimating the damages—are the chief points made in this case, and the questions presented by them are no longer open.

On the trial, when the plaintiff proposed to ask the opinions of certain witnesses as to the fact of diminution in rental value of the farm, and the extent of it, after having examined them as to their qualification to give such opinions, the defendant insisted upon the right to cross-examine them as to their qualification before they should be permitted to give their opinions. The court refused to permit the cross-examinations at that time, but allowed the defendant full cross-examinations as to their qualification after they had given their opinions, and the plaintiff had closed the direct examinations. The refusal to permit such preliminary cross-examinations is assigned as error. Whether a witness is qualified to give an opinion is to be decided by the court, as a question of fact, before the witness shall be permitted to state his opinion. It would seem, logically, that, before deciding it, all the evidence bearing on the question, whether brought out by direct or cross-examination, should be taken. That would certainly be so if the decision permitting the opinion to be given were final and conclusive that the witness is qualified, so that the jury are bound to take the opinion as that of an expert. The general practice is for the opposing party to exercise his right of cross-examination on the matter of qualification after the witness has been examined in full by the party offering him. That is the more convenient practice. And we think it is the understanding of the judges and the bar that while the court may, in its

discretion, permit a preliminary cross-examination, it is not bound to do so, but may allow the opinion to be given, when the direct examination shows *prima facie* that the witness is qualified. We are referred to but two decisions directly on the question, (*Sarle* v. *Arnold*, 7 R. I. 582; *City of Ft. Wayne* v. *Coombs*, 107 Ind. 75, 7 N. E. Rep. 743,) in which the preliminary cross-examination as a right was denied. We will follow those decisions the more readily, because the difference between the rule there laid down and an opposite rule is rather theoretical than practical.

The qualifications of the witnesses whose opinions were asked were sufficiently shown. They were practical farmers, and the question was how leaving a farm unfenced will affect its rental value. A lawyer, a banker, a merchant, any one not used to working a farm, would know very little about it. If any one can give an opinion of any value on the question, a practical farmer can.

The verdict in the case seems, under the evidence, a large one, but no question is made on the amount. And certainly the evidence justifies a verdict in some amount. All the arguments that the defendant makes in support of its point that the verdict is contrary to the evidence, giving them all the weight and force they are entitled to, and conceding them to be justified by the evidence, really go only to the amount of the damages. As an instance of this, it argues that the basis of plaintiff's claim that the rental value was diminished was his inability, by reason of defendant's failure to fence, to raise stock on the farm, whereas the farm was unfenced on the other three sides, so that in that condition it could not be used as a stock farm. But if the land was adapted to raising stock, (and the evidence indicates that it was,) the neglect of defendant to fence along its line would disable plaintiff to make a stock farm of it, though he should wish to do so. That certainly might impair its rental value; might make it a less valuable farm.

Whether plaintiff had agreed that his attorneys should have part of the recovery was entirely immaterial. Proof of it could have no rightful bearing on the right to recover, nor on the amount of the recovery.

Order affirmed.