## JOHN L. GOULD v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 27, 1895.

Nos. 9442—(40).

**Railway Company—Duty to Fence.**

The words "on each side of such roads," as used in G. S. 1894, § 2692, relating to fencing railroads, mean the margin or border of the entire grounds or right of way.

**Same—Failure to Fence—Damages.**

Where a railroad company has only an easement in its right of way extending through farm lands, and it refuses or neglects to build a fence on the line of its right of way, or inside such line, the adjoining landowner may maintain an action for damages sustained thereby; and it is competent for such landowner to show on the trial of such action, as an element of damages, that he would have the legal right to join his fences with the fence of the railroad company, whether built on or inside of such line, although it is the primary duty of such railroad company to build its fence on the line, margin, or edge of its right of way.

**Verdict Sustained.**

Evidence considered, and *held* sufficient to justify the verdict of the jury.

Appeal by defendant from an order of the district court for Stevens county, C. L. Brown, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $900. Affirmed.

*M. D. Grover* and *C. Wellington*, for appellant.

*William C. Bicknell*, for respondent.

BUCK, J. This action is brought to recover damages arising from the neglect of the defendant to fence its railroad as required by G. S. 1894, § 2692.

The plaintiff owns two large adjacent stock farms in Stevens county; one containing 640 acres and the other 320 acres. The defendant's road is constructed across each of these farms, for a distance of about two miles, without being fenced as required by law. Each farm is used separately, and has its own buildings. The railroad runs nearly through the center of one farm, and divides the other so

[1] Reported in 65 N. W. 125.

as to leave a larger portion upon one side than upon the other. About one-half of these farms is suitable for raising stock, and the balance is well adapted to the raising of grain. The neglect of the railroad company to erect its fences on each side of its road is a plain violation of a positive law. The omission to erect these fences renders these farms, to some extent, less suitable for stock raising, and deprives the plaintiff from using them with such advantage and profit as he otherwise would. And this result would tend to impair its rental value, and make the farm less valuable. Finch v. Chicago, M. & St. P. R. Co., 46 Minn. 250, 48 N. W. 915. If the verdict in this case rests upon sufficient legal evidence as to the damages arising from the impaired rental value, and the depreciation in the value of the farm, in consequence of the defendant's neglect to fence its road, we cannot properly disturb the verdict.

There were only three witnesses, including the plaintiff, sworn in his behalf, and none on behalf of the defendant. The witness Brittondall testified as to the amount of damages to the premises by reason of the railroad's not being fenced, but added that he also based his opinion as to such damages upon the fact that the whole tract was not fenced on all sides. Of course, such evidence could not constitute the proper basis for estimating the legal measure of damages, as against the defendant, by reason of its neglect to fence its road. Whether there were fences or not on all of the other sides of the farm, except where the railroad was bound to fence, was immaterial, and could not properly be considered in adding to or lessening the damages to which the defendant was liable by reason of its neglect to fence its road as required by law. None of the evidence of this kind, however, was objected to, and therefore no question of error arises upon its admission. If there was no other testimony upon the subject, it would only show that the verdict of the jury is not sustained by the evidence. It is claimed by the defendant that the testimony of the witness Sanders is of the same character. There is considerable doubt about this being a fair construction of his evidence. It can be asserted with much force that his testimony related to the fence which the railroad company was bound to build, and not to fences upon other sides of the premises. But, whichever view of the testimony is correct, it is not necessarily material in the deter-

mination of this case. The plaintiff did not so testify, but did testify as to the impaired rental value of the land by reason of there being no railroad fence there. His uncontradicted and unimpeached testimony was sufficient to sustain the verdict of the jury in this respect, unless his further explanation of the manner of estimating the rental value of the lands is of such a character as to nullify his previous testimony, and make it, as a whole, incompetent and insufficient as a basis for estimating proper damages. In estimating the difference in the rental value with and without the fences being there, he based it upon the ground that the fences would be on each side of the track, 75 feet from the center of the track, which would make the fence on the division line between the parties. He also testified as follows: I base my estimate of the rental value upon the proposition that I have a right to join my fence to that of the railroad company, built directly upon the line between my land and the railroad right of way, so that I can have the use of the railroad company's fence on one side.

The statute to which we have above referred (G. S. 1894, § 2692), in regard to railroad companies' fencing their roads, reads as follows: "All railroad companies in this state shall, within six months from and after the passage of this act, build or cause to be built good and sufficient cattle-guards at all wagon-crossings, and good and substantial fences on each side of such road." Evidently, the witness based his opinion upon the assumption that it was the duty of the railroad company to build its fences on the margin or outer line of its right of way; that is, upon the division line between him and the railroad company. Is not this the true construction to be placed upon the language of the statute? In Webster's International Dictionary the word "side" is defined to be the "margin, edge, verge, or border of a surface; * * * a bounding line of a geometrical figure; as, the side of a field, of a square or triangle, of a river, of a road." This word "side" is not here used in a technical sense, but as it is commonly and properly understood. The meaning of the words "on each side of such road" is that the fence must be built on the margin or border of the entire railroad right of way, and therefore on the division line between such right of way and that of the adjoining proprietor. This construction evidently gives full force to the spirit and intent of the language of the statute, as well as to the usual and popular meaning

attached to the words. While the authorities are almost, if not quite, universal that the primary object of the statute requiring railroads to fence their roads is one of a police nature, yet possibly it might have been the legislative intent that such a fence would also serve as a partition or division fence. Probably the railroad company could not, especially when it has only an easement in the right of way, be compelled to build a partition fence, as such, yet it may constitute one; and we think that the adjoining landowner should share the right to join fences with the fence of the railroad company, whether such a fence is denominated simply a "railroad fence," or a "partition fence," which incloses upon one side the land of the adjoining owner, and as a matter of legal right such owner would have the benefit of it, as a partition fence.

This was the view taken of the statute of Illinois which required the railroad company to erect and maintain fences on both sides of its road.[2] People v. Ohio & M. R. Co., 21 Ill. App. 23. And it was there held that the words "on both sides of its road" meant the margin or border of the entire grounds used as a roadway. To the same effect are Wabash, St. L. & P. R. Co. v. Zeigler, 108 Ill. 304, and Ohio & M. R. Co. v. People, 121 Ill. 483, 13 N. E. 236. In the latter case the court uses the following language: "The question now is, whether a railroad company, in complying with the statute in question, may build a fence required thereby anywhere on its right of way, except on the line between its right of way and the adjoining owner's land, or, what is the same thing, is the fence now constructed, after notice given, ten feet within and upon its right of way, and that distance from the adjoining owner's land, a compliance with the provisions of the statute in regard to fencing railroads? It is thought it is not. The statute is so plain in this regard, it seems idle to attempt to construe it. It makes it the duty of the company to erect a fence on 'both sides of the road,'—that is, so as to embrace the right of way; and so this court has held in Wabash, St. L. & P. R. Co. v. Zeigler, 108 Ill. 304. In that case it was decided a fence built two feet inside of the right of way was not constructed in conformity with the statute. The suggestion the 'sides of its road' may mean the mere 'track' upon which trains are moved, is too absurd to be seriously considered." See, also, Thornton, R. R. Fences, § 135.

[2] Rev. St. (1874), c. 114, § 37 (p. 808).

Of course, where there are such natural or physical formations of the ground as to make it difficult or impossible to comply with the statute, the company would not be liable for not fencing on the margin of its right of way. But where no such obstacles intervene, the railroad company is bound to build its fences on the margin of its right of way, and the adjoining landowner has a right to connect his fences with its fences whenever he builds up to them. Even if it is not the object of the law to furnish the landowner with a partition fence on one side of his land, yet its provisions and requirements do embrace the protection of the cattle of the owner of a stock farm as well as the safety of travelers upon its railroad, or the lives of its employés.

But there is another ground upon which the order of the trial court should be sustained. There is a long line of cases, commencing with that of Winona & St. P. R. Co. v. Waldron, 11 Minn. 392 (515), holding, as the settled doctrine of this court, that when a railroad company, whether as a condition or limitation of its right to take land for its road, or as a police regulation, is required to fence its road, the damages for the taking the land should be assessed upon the basis of the construction of such fences by the railroad company. In this case we must assume, in the absence of any proof to the contrary, that the railway company has merely an easement in its right of way, and that the fee of the land, subject to the easement, remains in the plaintiff. If the railroad company had built a fence on the line of its right of way, the plaintiff would have been entitled to join his fences to it, so as to inclose his land, without having to build another and parallel fence on the same side of his land. Even if we should concede that the railway company is not bound to build its fence on the line of its right of way, it is clear that it cannot, by building it inside of the line, upon its right of way, deprive the landowner of the benefit of it as a line fence. If the company builds its fence inside of the margin or edge of its right of way, the landowner may extend his fences so as to connect with it. Having had his damages assessed upon the basis that it, and not the landowner, will build the fence between him and it, the railroad company cannot be heard to say that he cannot join his fences to its fence for the purpose of inclosing his land; and this right to thus connect his fence is an element which may be taken into account in estimating the value of the use

of the land. Hence the railroad company should do one of two things,—build its fence on the line of its right of way, or if it build on such right of way, inside the line, allow the adjoining landowner to join his fences to the railroad company's fence. If the railroad company desires an unobstructed use of its entire right of way, it can easily accomplish this purpose by building its fence on the margin thereof, and thus do away with the obligation to permit the adjoining landowner to join fences with its fence. It cannot defeat the right of the adjoining landowner to have his fences connect with its fence by refusing to build a fence either on its line or inside of it, although, as we have stated, its primary duty is to build its fence on the margin of its right of way.

Therefore it seems to us that the plaintiff's testimony in regard to the grounds upon which he based his damages was substantially correct. It was the legal right of joining his fences with the defendant's, either on the exact line, or near to and inside of it, which he considered the primary element in estimating his damages, and the matter of expense in building a few feet of additional fence would be of too little consequence to seriously affect the amount of damages one way or the other, and certainly not to the disadvantage of the defendant's rights. It was therefore properly submitted to the jury, and, there being no evidence to the contrary, we should not disturb the verdict.

It is a matter of great importance that railroad companies fence their right of way, because it involves the safety of the lives of the traveling public, as well as the interests of the adjoining landowner; and, if they continually and obstinately persist in defying the plain provisions of a positive law, perhaps obedience to its requirements will be quickened and obtained by being mulcted in damages in favor of an injured landowner, the rental value of whose adjoining farm is thus impaired year after year.

There being no prejudicial errors in the case, the order denying the motion for a new trial is affirmed.

MITCHELL, J. I concur in the result, but do not wish to commit myself to the proposition that under the statute a railroad company is required to build its fences on the line of its right of way. The

determination of that question is not necessary to the decision of this case, and therefore I place my concurrence upon the second ground suggested in the opinion. A railroad company, at least where it has a mere easement in the land, cannot, by building its fence inside of the line of its right of way, deprive the owner of the fee from joining his fences to theirs. Leaving part of the right of way outside of their fence amounts to implied authority to the owner of the fee to inclose that part left outside with his adjoining land, by connecting his fence with the railroad fence.

CANTY, J.  I concur with Judge MITCHELL.