LOUISVILLE & NASHVILLE R. R. CO. *v.* TIMMONS.

(*Nashville*. December Term, 1905.)

1. **JURY.** Demand for, on first dry of term. Entry on trial docket.

A party desiring a jury in a case appealed from the judgment of a justice of the peace must make demand on the first day of the term of the court to which the case is appealed, or, in default thereof, then on the first day of any succeeding term at which the cause may stand for trial, and in either case he must have an entry of the demand made upon the trial docket.

Code cited and construed: Secs. 4611, 4612, 4613 (S.); 3602, 3603, 3604 (M. & V.).

Case cited and approved: Swink v. McKnight, 88 Tenn., 765.

2. **SAME.** Same. Same. Trial docket means clerk's docket.

The "trial docket" referred to in the sections of the Code cited under first headnote is the clerk's docket, and not the judge's docket or the bar docket.

Code cited and construed; Secs. 4666 (S.); 3655 (M. & V.); 2945 (T. & S. and 1858).

3. **SAME.** Question reserved and not decided.

Whether or not the demand for a jury, made at the proper time, would be effective if entered upon the judge's docket or the bar docket, and not entered upon the clerk's docket.

4. **RAILROADS.** Cattle guards intended to protect landowner.

The provisions of the statute requiring every railroad company, whose unfenced track passes through a field or inclosure, to place sufficient cattle guards or stops at the points of entering such field or inclosure, were intended to protect the lands and crops of adjacent landowners, or their tenants, from the incursions of straying cattle and other live stock, and also to prevent the escape of such animals from the premises.

Code cited and construed: Secs. 1595, 1596, 1597 (S.).

5. **SAME.** Measure of damages for failure to erect cattle guard.
The damages to which the injured party is entitled for the failure of a railroad company to erect cattle guards pursuant to said statutory provisions are to be measured in relation to the use to which the land is put by the owner.

Case cited and approved: Gould v. Great Nor. R. Co., 63 Minn., 37.

6. **SAME. Same. Owner must fence his land in order to recover.**
As a condition precedent to a recovery of damages by him for the failure of a railroad company to erect cattle guards, the occupation of the land owner must be evidenced by a fence or some other form of inclosure, to which the railroad company may join its cattle guards.

Case cited and approved: R. R. v. Bryan, 100 Tenn., 204.

7. **SAME.** Evidence of dangerous places on adjacent land immaterial, when.
Evidence of dangerous places on adjacent lands, into which cattle, in the absence of cattle guards, could stray, and where there would be great danger of injury to them, is immaterial, unless it appears that the owner has inclosed his lands so as to make the cattle guards and their connecting wings available as a protection to the land.

8. **SAME.** No defense that cattle guard would increase danger to trains.
It is no defense to a suit for damages inflicted by reason of a failure to erect cattle guards that such guards would endanger trains, because it is the duty of the railroad company to obey the law and to guard against additional dangers made apparent at particular places by proper precautions, even to the extent of fencing the track at such places.

9. **SAME.** Cattle guards may be waived by landowner.
The provisions of the statute requiring cattle guards at field intersections upon unfenced railroad tracks being for the bene-

Railroad v. Timmons.

fit of the landowner may be waived by him, and where he enters into negotiations with the railroad company for the fencing of his lands, on the basis of a division of the expense, in lieu of putting in cattle guards, he will be held to have impliedly waived the absence of cattle guards during the pendency of such negotiations, and he cannot lawfully complain of injuries suffered during the existence of such waiver.

**10. MAXIMS.** Volenti non fit injuria.

Applied to the claim of a landowner for damages upon the facts stated in the preceding headnote.

FROM WILLIAMSON.

Appeal in error from the Circuit Court of Williamson County.—J. A. CARTWRIGHT, Judge.

JOHN BELL KEEBLE and HENDERSON & HENDERSON, for Railroad.

HEARN, M'CORKLE & LANE, for Timmons.

MR. JUSTICE NEIL delivered the opinion of the Court.

This was an action originally brought before a justice of the peace of Williamson county, and from his judgment carried by appeal to the circuit court of that county, where, on a trial had before Judge Cartwright and a jury, verdict and judgment were rendered in favor of defendant in error for $155.

The cause of action stated in the warrant was: "Failure to place and keep a good and sufficient cattle guard or stops at the point of entering his (Timmons') field or inclosure near to and adjoining the town of Thompson's Station, and lying between mile posts 214 and 215 on the L. & N. R. R., thereby exposing his premises and depriving him of the use of same as a pasture; said railroad being between these points an unfenced track."

On August 18, 1905, before the trial of the cause, the plaintiff in error moved the court to remand it to the nonjury docket, because the record failed to show affirmatively that the jury was called for at the time required by law.

The case had been appealed to the April term of the circuit court. The entries of record at that term were the following: On the judge's docket, opposite the style of the case, these words: "Jury demanded." On the clerk's docket at that term, opposite the style of the case, the following appears: "5) jury."

His honor overruled the motion, and his action upon this matter is assigned as error.

The following sections of Shannon's Code contain the provisions of the law applicable to the subject:

"4611. When any civil suit is originally brought in any of the courts of record in this State, which is triable by jury, either party desiring a jury shall demand a jury in his first pleading tendering an issue triable by jury, or he shall call for the same on the first day of any

term at which the suit stands for trial, and have an entry made on the trial docket that he calls for a jury; and unless such demand is made and entry thereof on the trial docket, it shall be the duty of the court to try the case without a jury.

"4612. In the case of all other suits, either party desiring a jury shall call for the same, and have an entry made on the trial docket that he calls for a jury, and unless such demand is made and entry thereof on the trial docket, it shall be the duty of the court to try the case without a jury; and if no such demand or call is made as aforesaid, and in the manner and time aforesaid, the clerk shall place such cause on the docket to be styled the 'Nonjury Docket.'

"4613. A failure to demand or to call for a jury as aforesaid, shall be deemed and held, conclusively, an agreement of the parties to submit all issues and questions of fact to the decision of the judge without a jury; and if such demand or call is made as aforesaid, then the clerk shall place the cause wherein the demand or call is made, upon a docket to be styled 'Jury Docket.' "

Under these provisions of the statute, it is the duty of the party desiring a jury, in a case appealed from the judgment of a justice of the peace, to make demand on the first day of the term of the court to which the cause shall be appealed, and, in default thereof, then on the first day of any succeeding term at which the cause

116 Tenn.—3

may stand for trial. In either case he should have an entry of the demand made upon the trial docket. The docket referred to is the clerk's docket (Shannon's Code, sec. 4666), which is at all times accessible to the bar. We do not say that the entry would not be effective if made upon the judge's docket or the bar docket, but the clerk's docket is the proper place for it.

The entries above copied from the judge's docket and from the clerk's docket were not a compliance with this rule. It is impossible to tell from them on what day of the term the application was made. It was the intention of the legislature that the evidence of the demand for a jury should affirmatively appear upon the trial docket. The date being of the essence of the demand, there could be no compliance with the statutory requirement in the absence of the appearance of such date. The matter cannot be covered by the mere presumption that the entry was made of the true date. Our attention is called by counsel for defendant in error to the figure 5 appearing on the clerk's entry, and it is said that the court met on the fifth of the month. The figure is unmeaning, and we cannot supply the words necessary to give it the meaning insisted upon by the defendant in error.

We may add that it does not appear that any demand was made for a jury on the first day of the term at which the cause was actually tried. Such demand would, of course, have been in time. *Swink* v. *McKnight,* 88 Tenn., 765, 14 S. W., 311.

His honor erred, therefore, in declining to transfer the cause to the nonjury docket. This necessitates a reversal, and a remand to the circuit court for a new trial.

To shorten the litigation, however, we deem it proper to express our opinion upon the question of law raised in the assignment of errors and the reply brief, in so for as we consider these questions material.

The action was based upon the provisions of the following sections of Shannon's Code:

"1595. Each and every railroad company whose unfenced track passes through a field or inclosure is hereby required to place a good and sufficient cattle guard or stops at the points of entering such field or inclosure, and keep the same in good repair.

"1596. In case a field or inclosure through which such unfenced railroad track passes shall be enlarged or extended, or the owner of the land over which such unfenced track passes shall open a field so as to embrace the track of such railroad, such railroad company is hereby required to place good and sufficient cattle guards or stops at the margin of such inclosure of fields, and keep the same in repair: Provided, such owner shall give the nearest or most accessible agent of such company thirty days' notice of such change.

"1597. Any railroad company neglecting or refusing to comply with the provisions of sections 1595 and 1596 shall be liable for all damages sustained by anyone by reason of such neglect or refusal; and, in order for the

injured party to recover all damages he has sustained, it shall be only necessary for him to prove such neglect or refusal, and the amount of such damages: Provided, such company shall not be liable if it shall be shown that the opening of such field was made capriciously and with intent to annoy and molest such company."

1. The statute was intended to protect the lands and crops of adjacent landowners or their tenants from the incursions of straying cattle and other live stock, and also to prevent the escape of such animals from the premises.

The damages are to be measured in relation to the use to which the land is put by the owner. When it is prepared and usable for pasturage, as in the present instance, and the owner is wholly deprived of the enjoyment of it for such purpose, by reason of the absence of cattle guards, he is entitled to recover its rental value for that purpose during the time he is so deprived or to such an extent as he may be deprived. This was in substance the measure of damages recognized in *Gould* v. *Great Northern Ry. Co.* (Minn.), 65 N. W., 125, 30 L. R. A., 590, 591, 593, 56 Am. St. Rep., 453, and it is a reasonable rule.

2. It is the duty of the railway company to construct cattle guards where it enters and leaves the land through which it passes, and to extend them by wing fences or other structures over so much of the right of way as it occupies to the point where the land is occupied by

the owner (*Railroad* v. *Bryan,* 100 Tenn., 204, 207, 45 S. W., 671) ; but such occupation of the landowner must be evidenced by a fence or some other form of inclosure as a preliminary to the recovery of damages by him for failure to erect the cattle guard, and the company must join to such fence, since it would appear an idle thing to require land to be protected by a cattle guard when, by reason of the lack of a fence or other form of inclosure running to that portion of the right of way occupied by the company, such cattle guard would afford no protection.

3.    There is evidence in the record tending to show that a few hundred feet from where the railway entered defendant in error's land and a few hunderd feet from where it left this land, there was a *cul-de-sac,* made by cattle guards on the track opposite the land of neighboring owners and the peculiar configuration of the adjoining land, and that in the absence of a cattle guard upon the defendant in error's land cattle could stray down into this place, where there was great danger of injury to them; that in fact they were frequently killed in this manner; that this condition of things was productive of injury to the defendant in error, in lessening the usable value of his land as a place for the pasturage of cattle.    This evidence, however, would be of no practical value, in the absence of evidence on the part of the owner that he had constructed a fence on his land of such a character as to make the cattle guard and its connecting wings available as a protection to his land.

4. It is not a good defense to a suit for damages inflicted by reason of a failure to erect cattle guards that to have made such erections at the places required by law would have endangered trains, because of the tendency of cattle to herd in places of a special description such as would be produced by cattle guards at moist places sheltered by the walls of a cut, where there would be shade. It is the duty of the company to obey the law and to guard against additional dangers made apparent at particular places by proper precautions at such dangerous places, even to the extent of fencing the track at such places in lieu of cattle guards, if such precaution be necessary to the protection of the track. The statute provides for cattle guards, but its purpose will be met by equivalent protection in another form.

5. There was evidence tending to show that negotiations were under way for a considerable time between the defendant in error and the plaintiff in error for the fencing of the land of the former on a division of expenses in lieu of putting in cattle guards. This evidence was held incompetent by his honor. It was insisted by plaintiff in error that the evidence was competent, and that during the pendency of such negotiations the landowner would not be entitled to claim damages for the absence of cattle guards. In opposition to this it was insisted for the defendant in error that the obligation to put in cattle guards was mandatory, under the statute, and that such negotiations could not excuse the company.

Railroad v. Timmons.

.We are of the opinion that the evidence was competent. As said above, the provisions concerning cattle guards were enacted for the benefit of the owners of land through which the railway might pass. If delay in the execution of such provisions is caused by the pendency of negotiations between such owner and the railway company for a different form of protection, it would not be just to hold the company responsible for losses that might ensue in the meantime. The true conclusion is that during such interval the landowner should be held as consenting to the absence of the cattle guard. The provisions referred to having been intended for his benefit, he could waive them, and could not lawfully complain of injuries suffered during the existence of such waiver. *"Volenti non fit injuria."*

The judgment must be reversed, and the cause remanded for a new trial.