PEOPLE *v.* KIMBROUGH.

1. CRIMINAL LAW—HOMICIDE—CORPUS DELICTI—ORDER OF PROOF—
TRIAL.

Where respondent, a colored man, was convicted of the
murder of an eight-year-old girl, whose body he cremated
in the furnace of a manufacturing plant, of which he was
in charge as a porter or caretaker, and at the trial his
attorney objected to the order of proof because the *corpus
delicti* should be first established, the conviction was not
subject to reversal for the reason that some of the testi-
mony given by various witnesses might have been pre-
sented in different order, involving the recalling of some
of them at a later time, in the absence of prejudice to the
accused.

2. SAME—CONDUCT OF COURT—PREJUDICIAL REMARKS.

During a controversy between counsel and the court rela-
tive to the admission of certain testimony in the order
in which it was offered, the court did not commit reversi-
ble error by restricting the remarks of respondent's at-
torney or criticizing him for exceeding the limitations of
propriety, etc.

3. SAME—EVIDENCE—COMPETENCY.

Although the trial court could exercise his discretion by
allowing a cross-examination out of order of a witness
who testified that he was a professor of anatomy in a
reputable university, and allow an investigation into the
qualifications of witness, it was not a matter of right and
the refusal of permission to examine him concerning his
qualifications was not error.

4. SAME—CROSS-EXAMINATION—WITNESSES.

The objection that respondent was asked about other fel-
onies concerning which he insisted upon giving numerous
details, and the results of the prosecution, was not well
taken; respondent having offered himself as a witness,
thereby subjecting himself to the same cross-examination
as any other witness.

5. SAME—TRIAL—PRESENCE OF JUDGE—NEW TRIAL.

The absence of the circuit judge from the bench during
the arguments of the respective attorneys for the State

and for respondent was not a reason for awarding a new trial when the court was in his room leading into the court room and was able to and did hear the arguments and re-entered the court room immediately if any objection or controversy arose, unless some showing of prejudice or harmful result was made.

6. SAME—TRIAL—CROSS-EXAMINATION.

Nor was the fact that several physicians were invited by the sheriff to attend the examination of a medical expert, and were invited to take chairs within the railing, an adequate ground for reversal, the court returning that at various times during the trial chairs were brought inside the rail for the use of the spectators: the management of this feature of the trial was within the discretion of the trial court.

Error to Saginaw; Gage, J. Submitted April 13, 1916. (Docket No. 126.) Decided September 27, 1916.

Charles Kimbrough was convicted of murder in the first degree and sentenced to life imprisonment at hard labor at Marquette. Affirmed.

*Grant Fellows*, Attorney General, and *Bird J. Vincent*, Prosecuting Attorney, for the people.

*Robert J. Curry*, for respondent.

BIRD, J. Respondent was convicted on a charge of murder in the Saginaw circuit court, and sentenced to life imprisonment. The evidence was circumstantial. It was the claim of the people that respondent murdered Rose Fernier, an eight-year-old girl, and afterwards burned her body in the furnace of the manufacturing plant of the Valley Sweets Company, where he was employed as a porter, when the girl disappeared. Rose Fernier lived with her grandmother on Hamilton street in the city of Saginaw. On Sunday evening, January 3, 1915, Rose was sent by her grandmother to a nearby restaurant on Hamilton street for

some articles of food. She went to the restaurant as directed, but not finding what she was ordered to get, started to return to her home. In doing so her way led her past the plant of the Valley Sweets Company. Just before she reached the plant she was observed by an acquaintance going in the direction of her home. Nothing was afterwards seen of her, although a thorough search was made. The following day pieces of human bones were found in the furnace of the Valley Sweets Company, which were shown to be the bones of a child between the ages of seven and nine years. It was claimed that respondent was at the plant at the time the little girl disappeared. Respondent reviews the proceedings of the trial court by writ of error, claiming that serious errors were committed on the trial.

1. Counsel objected seriously to the order of proof which prevailed at the trial. The basis of the objection was the rule that evidence of the *corpus delicti* shall be first introduced, and he asserts that nearly all of the evidence which tended to connect defendant with the crime was admitted in evidence before the testimony of Dr. McCotter was received, showing that the bones were human bones, and were the bones of a child between the ages of seven and nine years. There appears to be very little, if any, contention between counsel as to the rule in cases of homicide that all the evidence tending to prove the *corpus delicti* must be first introduced. Neither is there any contention over the rule that where items of evidence tend not only to prove the *corpus delicti*, but tend to connect the defendant with the commission of the crime, they are admissible at any time, but respondent insists that the trial court abused his discretion in allowing the respondent to be connected with the offense before it was established.

Had the body been found and been susceptible of

identification, the order of proof which was pursued undoubtedly would have been objectionable. The prosecutor was driven to establish the *corpus delicti* by circumstances, and the circumstances by which he established it were so interwoven with the testimony tending to establish the respondent's guilt that it was difficult to show one without incidentally showing the other. It is true there were some items of testimony that might have been segregated from the mass and introduced independently, and the witnesses afterwards recalled to testify to the facts which tended to connect respondent with the crime, but those cases were not numerous, and do not appear to have been harmful to respondent. No error in this regard is apparent.

2. The controversy over the order of proof engendered more or less heat between court and counsel. At one stage of the discussion the court remarked:

"If I could see the least reason for holding it would injure the defendant to introduce expert testimony at this time, instead of waiting until they completed their other evidence, I would hold with you. I cannot see any injury he could possibly suffer. It looks to me like a little attempt to prevent— I will withhold that.

"*Mr. Curry:* I take an exception to the remark of the judge."

The controversy ran on for a time when the following occurred:

"*Mr. Curry:* I took an exception when he went on the stand.

"*The Court:* Yes, you have your exception.

"*Mr. Curry:* It is not a matter of discretion; it is the absolute right this defendant has in this case.

"*The Court:* There is a Supreme Court at Lansing.

"*Mr. Curry:* This man hasn't any money. You are all aware of that fact.

"*Mr. Vincent:* I submit that this statement that this man has no money is improper after what this man is having done for him.

*"Mr. Curry:* They don't pay for an appeal.

*"Mr. Vincent:* I take an exception to that kind of a remark.

*"The Court:* Yes; I won't tolerate any more of this.

*"Mr. Curry:* I want a fair trial for the defendant.

*"The Court:* You will have a fair trial. I propose to see that you don't take advantage of matters that you don't have any right to.

*"Mr. Curry:* I take an exception."

Respondent's counsel urges that the remarks of the court were improper and prejudicial to the respondent, and tended to discredit counsel in the eyes of the jury. If any harm resulted to respondent from this controversy, it was due to counsel's persistence in urging his objections after he had the view of the court and his intimation that the court was not fair in his ruling. It could hardly be expected that the court would allow such an intimation to pass without resenting it. But I am of the opinion that it resulted in no harm to the respondent. Such colloquies between court and counsel are not unusual in the trial of causes, and especially in criminal cases, and the average juror knows it and understands it. He does not charge up against the client all the unpleasant things that may be said to counsel. We cannot assume that this disagreement between court and counsel over the rules of evidence would prejudice the jury against the respondent.

3. Dr. Rollo E. McCotter was sworn on behalf of the people and testified that he was professor of anatomy at the medical school at the University of Michigan, and that the particular branch of anatomy to which he gave attention was comparative anatomy. The prosecutor then began his examination, whereupon counsel interrupted and the following took place:

*"Mr. Curry:* I would like to ask a question as to his competency.

"*Mr. Vincent:* He will have an opportunity to cross-examine.

"*The Court:* I think we will take judicial notice of the fact that this gentleman, employed in that way, in Ann Arbor, that he is competent to testify on that subject.

"*Mr. Curry:* I take an exception.

"*The Court:* You may have your cross-examination"·—after which the prosecutor proceeded with his examination.

Counsel assigns the refusal of the court to permit him to examine the witness as error.

The rule is stated in 5 Enc. of Evidence, p. 547, as follows:

"Though the court may in its discretion allow the opposing party to cross-examine an expert witness as to his qualifications before permitting him to give his opinion, such preliminary cross-examination is not a matter of right"—and cites the following cases in support of it: *Finch* v. *Railway Co.,* 46 Minn. 250 (48 N. W. 915); *Sarle* v. *Arnold,* 7 R. I. 582; *City of Ft. Wayne* v. *Coombs,* 107 Ind. 75 (7 N. E. 743).

While it is the usual practice for such a privilege to be granted to opposing counsel before the witness expresses his opinion, we are not prepared to hold that it is error to refuse it. It lies within the discretion of the trial court to determine finally whether the witness is qualified to give an opinion upon the particular subject. If he be satisfied of his competency to testify before the examination closes, we think he should be permitted to announce it and proceed to take his testimony. The cases in which the question has arisen are not numerous and appear to be somewhat in conflict, but we are inclined to accept the holding in the foregoing cases as the better rule.

4. The respondent was a witness in his own behalf, and admitted upon cross-examination that he had been

convicted of five distinct felonies, and in response to the prosecutor's questions he went into the details of each one of them. Complaint is made that the prosecutor had no right to demand the details of the several felonies. A review of the cross-examination of the respondent convinces us that respondent was more responsible for the details being given than was the prosecutor. In answer to the prosecutor's question of what offense he was convicted, he insisted upon giving the details of the offense charged and the outcome. He offered himself as a witness and in doing so he subjected himself to the same inquiries upon cross-examination as other witnesses. The extent to which the prosecutor pursued the inquiry was permissible under the authority of *People* v. *Howard,* 73 Mich. 10 (40 N. W. 789); *People* v. *Gray,* 135 Mich. 542 (98 N. W. 261); *People* v. *Parmelee,* 112 Mich. 296 (70 N. W. 577); *People* v. *Ecarius,* 124 Mich. 623 (83 N. W. 628); *People* v. *Higgins,* 127 Mich. 291 (86, N. W. 812); *People* v. *Bryan,* 170 Mich. 683 (136 N. W. 1120); *People* v. *Danenberg,* 176 Mich. 339 (142 N. W. 347).

5. A motion was entered for a new trial, and the reasons assigned therefor were the same as those upon which error was afterwards assigned. Two additional reasons are assigned which perhaps need some attention. A showing was made that the judge who presided at the trial was absent from the courtroom during the argument of counsel to the jury. The judge in reply shows that he was absent some of the time in his room, but that the door was open leading into the courtroom, and that he was able to and did hear the arguments, and that whenever any controversy arose and. objection was made he immediately went into the courtroom. There is no showing that the absence of the judge resulted in any prejudice to the respondent.

In the absence of such a showing we cannot say it was reversible error. *Spencer* v. *Johnson,* 176 Mich. 278 (142 N. W. 582).

6. By another showing it was made to appear that when Dr. McCotter testified, a large number of doctors were invited by the sheriff to attend the examination, and that they occupied seats reserved for them within the bar, and that at no other time during the trial were chairs brought in and placed within the railing for the use of the public. Counsel says that the effect of this was to stage the testimony of Dr. McCotter and to give undue prominence to it, to the injury of respondent. It was admitted by the sheriff that certain doctors requested him to call them on the phone when Dr. McCotter was about to testify, and that in pursuance of this request, he notified several of them and they attended. That some of them sat within the bar and some outside, but he denies that seats were reserved for them, and denies that at no other time were chairs brought in and placed within the railing and occupied by the public. The judge returns that at many other times during the trial chairs were brought within the bar for the use of the public. Questions of this character pertain to the management of trials. Much is necessarily confided to the good judgment and discretion of the trial judge in the conduct of trials. He should prevent, so far as he reasonably can, all scenes and improprieties which would have a tendency to unduly injure the cause of either party to the controversy. Under the showing made we think there was nothing in the affair which calls upon us to review the conduct of the trial in this regard.

Error is assigned upon the argument of the prosecutor to the jury, but we find no ruling upon the objections. Therefore, under the rule, we shall not discuss them. *People* v. *Mulvaney,* 171 Mich. 272 (137

193 Mich.—22.

N. W. 155) ; *People* v. *Frontera*, 186 Mich. 343 (152 N. W. 1019).

So far as we are able to discern from the record, the respondent had a fair and impartial trial, and the judgment of conviction is affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.