## THE LOGANSPORT, CRAWFORDSVILLE AND SOUTH-WESTERN RAILWAY CO. *v.* WRAY.

PLEADING.—*Contract.*—*Motion for Judgment on Special Finding.*—Where a complaint upon a contract does not allege whether it was by parol or in writing, and no contract or copy thereof is filed with the complaint, it will be regarded as a parol contract. Where, in such case, there is a general verdict for the plaintiff, with a special finding that the contract was in writing, judgment should not be rendered for the defendant upon the special finding because of inconsistency thereof with the general verdict.

DAMAGES.—*Measure of.*—*Contract of Railroad Company to Erect Fences.*—Where a railroad company, in part consideration for the right of way over land, promised the land-owner to erect fences on each side of its railroad through said land, and to make cattle guards and farm crossings, the company was liable, upon its failure to perform such promise, to the cost of constructing such fences, etc., and it was not necessary, in order to recover such damages, that the fences, etc., should have been constructed by the plaintiff before bringing suit.

From the Montgomery Circuit Court.

*R. B. F. Peirce,* for appellant.

*J. M. Thompson* and *W. H. Thompson,* for appellee.

DOWNEY, J.—This was an action by the appellee against the appellant, to recover damages for the breach of a contract. The complaint is in four paragraphs. In the first it is alleged, in substance, that the said railroad was surveyed and located through the lands of the plaintiff, which are particularly described; that the company, by its engineer and president, entered into a verbal contract and agreement with the plaintiff that for the right of way it would pay the plaintiff sixty dollars per acre for the land appropriated; that under the contract the defendant took and appropriated four acres of the plaintiff's land; that it was further agreed that the defendant would build and construct a good and sufficient fence on each side of said railway across the plaintiff's land, and build and construct two good and sufficient farm crossings over the railway on said land. It is alleged that the defendant failed and refused to pay for said land, and to construct said fence and said crossings; wherefore the plain-

tiff is damaged one thousand dollars; for which he demands judgment.

The second paragraph of the complaint does not state whether the contract was oral or written, and it does not state the number of roadways which the defendant was to construct across the railway. It alleges that the company took and appropriated five acres of the plaintiff's land. In other respects this paragraph is like the first.

The third paragraph of the complaint is upon a contract, whether in writing or not is not stated, by which, it is alleged, the defendant agreed, in part consideration of the right of way, to construct two good and sufficient farm road crossings and two good and sufficient cattle passes.

The fourth paragraph of the complaint alleges a purchase of the right of way by the defendant over the plaintiff's land, embracing five acres, and an agreement to pay for the same at sixty dollars per acre. It is not stated whether the contract was written or oral.

The defendant answered in two paragraphs. The first was a general denial. The second was as follows:

"And for a further answer herein, the defendant says that the said Wray has never at any time delivered to the defendant an instrument of conveyance to the right of way mentioned in his complaint, and has never tendered any such instrument to the defendant herein; wherefore," etc.

The plaintiff demurred to the second paragraph of the answer, and the demurrer was sustained. The demurrer is not in the record.

The trial was by a jury, and there was a general verdict for the plaintiff in the sum of six hundred dollars; also, the following:

"Was not the contract between the plaintiff and defendant concerning the defendant's right of way through the plaintiff's farm, mentioned and described in his complaint, reduced to writing and delivered to John Levas, president of said company?" Answer. "Yes."

The defendant moved the court for judgment in its favor,

on the special finding, because the jury found that the contract for the right of way was reduced to writing by the parties at the time the contract was made. This motion was overruled by the court.

The defendant then moved the court for a new trial, which motion the court also overruled. Final judgment was rendered on the general verdict.

Errors are assigned as follows:

1. Sustaining the demurrer to the second paragraph of the answer.

2. Overruling the motion for judgment on the special finding.

3. Overruling the motion for a new trial.

The first alleged error, that is, the sustaining of the demurrer to the second paragraph of the answer, is not argued or urged by counsel for appellant, and therefore need not be considered.

In arguing the second position assumed in the assignment of errors, counsel urges that it must be presumed that the contracts referred to in the second, third and fourth paragraphs of the complaint, although nothing is alleged on that subject, were parol contracts, as well as that mentioned in the first paragraph, which is expressly stated to be a "verbal contract." We think this position is correct. The rule requires that when the contract on which the pleading is founded is in writing, the original or a copy of it must be filed with the pleading. As no contract or copy thereof is filed with the second, third or fourth paragraphs of the complaint, we must hold that the contract was by parol. *Lamb.* v. *Donovan,* 19 Ind. 40. Other cases might be cited.

The next position assumed by the counsel, in arguing this assignment, is, that the special finding that the contract was in writing is so inconsistent with the general verdict, which finds, expressly, nothing as to whether it was or was not in writing, that judgment should have been rendered for the defendant on the special finding. In this view we cannot agree with the counsel. The writing was only evidence of

the existence of the contract. It was, to be sure, higher and better evidence than parol evidence; but, if the parol evidence was not objected to, the contract might be established thereby as well as by the written evidence. The one is primary, and the other secondary. We think the objection that the contract was in writing, and not by parol merely, as shown in the complaint, to be available, should have been made at an earlier stage of the trial, and in a different mode from that adopted. There is no such inconsistency between the special finding and the general verdict as would require or justify the rendition of judgment on the special finding, rather than on the general verdict, according to 2 G. & H. 206, sec. 337.

Under the third assignment of errors, it is urged that the court, in the admission of evidence and in an instruction to the jury, adopted and acted upon a wrong theory as to the measure of damages. The charge given was as follows:

, "If you find for the plaintiff, the measure of his damages should be arrived at by computing the cost of constructing the fences on both sides of the railroad across plaintiff's farm, the cost of putting in two cattle guards and two farm crossings, and sixty dollars per acre for the land taken as right of way by defendant."

Counsel for appellant refers us to *The Indiana Central R. W. Co.* v. *Moore*, 23 Ind. 14, as an authority in opposition to the law as laid down by the circuit court. We do not think the case decisive of the question. In that case the action was to recover damages against the company for failing to make certain cow-pits, and it appeared from the evidence that the company had constructed the pits, but in a defective manner. Yet the court found that the measure of damages was the amount that it would have cost to construct, etc., the pits. This court was of the opinion that this was wrong, for the reason that the evidence showed that the pits had been built, though in a defective manner, and kept in repair by the company, and that the plaintiff was entitled to recover for the defects and nothing more. The plaintiff, in

the case under consideration, having performed his part of the contract, and the defendant having taken possession of the land of the plaintiff, and being in the enjoyment and use of the same, but having failed to pay for the land at the price agreed upon, and to construct the fences, etc., as agreed, it seems to us that the rule laid down by the court, as to the measure of damages, is correct. The position assumed by counsel, that the plaintiff, in such a case, cannot recover unless he has done the acts which the defendant agreed to do, cannot be correct. Suppose the defendant has agreed to erect a house for the plaintiff, has received the consideration for which he agreed to do the work, but failed to perform the contract on his part, and the plaintiff seeks to recover damages for the breach of the contract, is it the law that he cannot recover unless he has himself first erected the house? We think not. There is no question as to so much of the charge as relates to the price of the land taken, and we think there is no valid objection to any part of it. In *Lawton* v. *The Fitchburg R. R. Co.*, 8 Cush. 230, the point in question was ruled in accordance with the views above expressed. The company, in consideration of an amicable settlement of the damages of the land-owner for right of way, agreed with him to fence the land taken, and, failing to do so in a reasonable time, was sued by him for the breach of the agreement. It was held that the measure of damages was the sum which it would fairly cost to erect the fences according to the agreement.

In *The Chicago and Rock Island R. R. Co.* v. *Ward*, 16 Ill. 522, the court went further, and held the company liable for crops destroyed for want of the fence. The court said: "If the breach be in a failure to make repairs or perform labor, the rule of damages will give the cost of the repairs, or what will hire the labor," etc.

The judgment is affirmed, with five per cent. damages and costs.

Opinion filed November term, 1875; petition for a rehearing overruled May term, 1876.