HENRY G. EMMONS *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

September 11, 1886.

Railway Companies—Failure to Fence—Damage to Adjoining Land.— Under Gen. St. 1878, c. 34, § 57, damages may be recovered against a railroad company for injury done to a farm by rendering it less fit for pasturing cattle, in consequence of failure to fence the road as required by the statute.

Constitution—Statute requiring Fencing of Railways.—The statute requirement to fence railroads, and making the railroad company liable for damages in consequence of a failure to comply with its terms, is within the police power of the state.

The plaintiff brought this action in the district court for Freeborn county, to recover damages resulting to him by reason of the failure of the defendant to fence its railroad. His allegations of injury and damage were substantially as follows: The plaintiff is and has been for many years the owner of a farm, through which defendant's railroad runs on right of way conveyed to it by the plaintiff on October 16, 1879. Plaintiff's farm is used and occupied as his homestead, is under cultivation and properly enclosed by a fence, and is useful for the purpose of raising stock, and upon it the plaintiff has raised and cared for a large number of horses, cattle and other live-stock. Since October 16, 1879, the defendant has continued daily to run its locomotives and trains through the farm, and its right of way is not

and never has been fenced.    By reason of defendant's failure to fence its right of way, plaintiff's stock and cattle have been in imminent peril and danger, plaintiff has been compelled to spend much time and money in watching his stock and cattle, and preventing them from being killed, and has been deprived of the beneficial use of his farm, and the value of the use and occupation of his farm for the purpose of raising stock thereon has been greatly diminished and destroyed, whereby plaintiff has sustained damages in the sum of $1,000.

Upon the trial, before *Farmer*, J., and a jury, the ownership, location, use and occupancy of the farm were admitted to be as alleged in the complaint, and it was also admitted that defendant has not fenced its right of way, and is daily running its trains thereon. Thereupon the defendant objected to the admission of any evidence to prove the injury and damage complained of, which objection was sustained, upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and the action was dismissed.    Plaintiff appeals from an order refusing a new trial.

*Lovely, Morgan & Morgan,* for appellant.

*J. D. Springer,* for respondent, cited *Ward* v. *Paducah & Memphis R. Co.,* 4 Fed. Rep. 862; *Fitzgerald* v. *St. Paul, M. & M. Ry. Co.,* 29 Minn. 336, (13 N. W. Rep. 168;) *Missouri Pac. Ry. Co.* v. *Humes,* 115 U. S. 512, (6 Sup. Ct. Rep. 110;) Cooley, Const. Lim. 712.

GILFILLAN, C. J.    According to the facts alleged in the complaint, its theory is that a railroad company which neglects to fence its road is, under the statute, liable for the damages caused by such neglect to an abutting farm, in rendering its use less valuable, by exposing stock pastured or kept upon it to the dangers of an exposed and open railroad.    The defendant insists that the damages recoverable, under the statute, are only the more direct and immediate damages caused by the killing or injuring of cattle getting access to the track for want of a fence, or the injuring of passengers or employes on trains which come in collision with such cattle.    The statute (Gen. St. 1878, *c.* 34, § 57,) is as follows: "Any company or corporation operating a line of railroad in this state, and which company or corporation has failed or neglected to fence said road, and to erect crossings and cattle-

guards, * * * shall hereafter be liable for all damages sustained by any person in consequence of such failure or neglect." The language is certainly broad and general enough to cover damages to an abutting farm, by exposing animals pastured or kept on it to the dangers of an open railroad; thus rendering it less valuable for the purpose of raising or pasturing animals than it would be if the railroad were fenced as required by the statute. Such a case is within the letter of the statute, and we do not see why it is not within its spirit and purpose. That the section was intended to cover more than cases of damage by actually killing or injuring animals is manifest from the fact that the liability for such cases is provided for in section 55, and it is not to be presumed that section 57 was intended to be a mere repetition of that section.

Compliance by a railroad company with the requirement of the statute furnishes a measure of security to cattle on abutting lands against the acts and dangerous business of the company, and which security the statute must have intended the company should provide to such lands. The object was not to benefit those lands,—that is, to improve and render them more valuable,—but to prevent, as far as possible, injury to them from maintaining and operating a railroad through or along-side of them. That a farm through which or along which a railroad runs is less valuable by reason of the road being without fences than it would be if the road were properly fenced, must be apparent to any one.

In *Winona & St. P. R. Co.* v. *Waldron,* 11 Minn. 392, (515,) 408, (533,) this court said: "We think it should admit of no doubt that, in the absence, at least, of different statutory legislation, where a railroad company passes through improved land, the cost of constructing additional fencing rendered necessary by the road is a proper element of damage to the owner of the land taken *in invitum* for the purpose of the road. But when the railroad company, whether as a condition or limitation of their right to take land for their road, or as a police regulation, is required by statute to construct such fences, the damages for taking the land should be assessed upon the basis of the construction of such fences by the company in accordance with the statutory requisition." This proceeds on the theory that the re-

quirement to fence the road is, in part at least, intended to, and that if complied with it will, protect the lands from the injurious effects on them that an open, unfenced road would have.

To regulate the carrying on of any business liable to be injurious to the property of others, like that of operating a railroad, so that it shall do the least possible injury to such property, is as much within the police power of the state as regulating it with a view to protect life from its dangers. There can be no doubt that the state may, under that power, require railroads to be so constructed, maintained, and operated, and so protected or inclosed, that they will injure as little as possible the farms or lands through or along-side of which they run.

The suggestion that operating a railroad without the fences required by the statute is in the nature of a common nuisance, and that none but those specially injured by it can maintain an action, has no application to the case. The general public do not have farms abutting on a particular railroad, and damage to such farms is not a damage common to all. It is peculiar to the owners of such farms. In a case of a public nuisance, if one sustains injury different in kind from that sustained by the public generally, it cannot be objected to his action that there are others, even many others, in the same situation as he.

As the court below dismissed the action, it of course did not pass on the measure of plaintiff's damages, and that question is not before us. We determine only that, on the allegations of the complaint, the plaintiff may maintain the action.

Order reversed.