THE LAKE ERIE AND WESTERN RAILWAY COMPANY *v.* GRIFFIN ET AL.

[No. 2,730. Filed May 24, 1899. Rehearing denied June 22, 1900.]

COVENANTS.—*Of Railroad-Company to Maintain Fence.*—A covenant of a railroad company to maintain a fence along right of way runs with the land. *pp. 141, 142.*

RAILROADS.—*Covenant to Fence Right of Way.—Breach.—Damages. —Diminution of Rental Value.*—For breach of covenant to fence a right of way, such covenant having been made by a railroad company prior to the act of April 13, 1885 requiring railroad companies to fence rights of way, a landowner over whose farm the road is laid may recover as damages the diminution of the rental value of the farm caused thereby. Henley and Wiley, JJ., Dissent. *pp. 146, 147.*

EVIDENCE.—*Cross-Examination.—Questions of Argumentative Character.*—Upon cross-examination of a witness, questions of a merely argumentative character which did not call for facts nor for opinions based upon facts within the knowledge of the witness or hypothetically assumed were improper, and the answers to such questions were rightly excluded.   *pp. 148, 149.*

RAILROADS.—*Action for Breach of Covenant to Fence Right of Way.—Instructions.*—In an action against a railroad company for damages for the diminution of the rental value of lands caused by breach of covenant to fence its right of way, it is not error to refuse to instruct the jury that one other particular kind of loss, which might have been made the basis of damages, under another form of complaint, was not to be taken as a measure of damages. *pp. 149, 150.*

SAME.—*Breach of Covenant to Fence Right of Way.—Damages.—Rental Value of Land.*—Where the rental value of land was depreciated by breach of a covenant on the part of a railroad company to maintain a fence, the covenantee may recover therefor whether or not the lands were actually rented or offered for rent. *pp. 150, 151.*

From the Henry Circuit Court.   *Affirmed.*

*W. E. Hackedorn, J. B. Cockrum, E. H. Bundy* and *W. A. Brown,* for appellant.

*M. E. Forkner* and *D. W. Chambers,* for appellees.

BLACK, J.—The complaint of the appellees, John W. Griffin and William L. Cory, against the appellant, a demurrer to which for want of sufficient facts was overruled, showed that on a day not stated, in June, 1881, the New Castle and Rushville Railroad Company had located the center of its right of way on the line dividing the east one-half of a certain quarter section of land in Henry county, Indiana, from the west one-half thereof, and for the purpose of its right of way desired to purchase a strip of land two rods in width off the east side of said west one-half; that the appellee Griffin was then the owner in fee of said west one-half, it being an improved and cultivated farm of said Griffin, and he and the said New Castle and Rushville Railroad Company then entered into an agreement, whereby the former sold, conveyed, and transferred to the latter, by a

good and sufficient deed, said strip of land, and said railroad company, as the sole consideration of said conveyance, agreed by and in said deed to build and perpetually maintain on the line dividing the right of way conveyed from the residue of said Griffin farm a good and sufficient fence against all hogs, cattle, horses, sheep, and other stock of every description; that said deed, on said day, after having been duly executed, was delivered to said railroad company by said Griffin, but that said railroad company and its successors had failed and refused to record it, and the appellees had no copy thereof, and were therefore unable to set out the same or a copy thereof as an exhibit; that by *mesne* conveyances from said New Castle and Rushville Railroad Company the appellant had succeeded to all rights and obligations, including the obligation to build and perpetually maintain said fence, of said New Castle and Rushville Railroad Company, and was the owner, and since January 1, 1891, had been managing and operating said railroad; that said New Castle and Rushville Railroad Company and all subsequent owners, including the appellant, had failed and refused to build and maintain said fence, although often requested by the appellees; that said Griffin had continued to be the owner, in whole or in part, of said land from the date of the execution of said deed to the commencement of this action; that on the 1st of January, 1895, he sold and conveyed by good and sufficient warranty deed to the appellee Cory the undivided one-half of said one-half quarter, and since that time the appellees had been the owners of said lands as tenants in common; that at the time of said conveyance said Griffin also sold and conveyed to said Cory all rights in all covenants running with said land, and especially under the deed conveying right of way to the New Castle and Rushville Railroad Company, that on the 26th of April, 1897, said Griffin sold, transferred, assigned, and set over to said Cory the undivided one-half of all rights of action then held by him against the appellant growing out of the violation by it of the condition and stipulation con-

tained in said deed in respect to building and maintaining a fence along the right of way; that by reason of appellant's failure to build and maintain said stock-proof fence from the 1st of January, 1891, up to the filing of the complaint herein, being the 27th of April, 1897, the rental value of said land had been greatly reduced, to wit, in the sum of $75 per year, to the damage of the appellees $450; wherefore, etc.

The appellant objects to the complaint "for the reason that the only damage shown by it to have been sustained by the plaintiff by reason of a failure to repair the fence consists of an alleged reduction or diminution in the rental value of the whole tract of land."

The question as to whether or not there may be a recovery for such damage as stated in the complaint is not conclusively settled by former decisions authorizing a recovery in such cases for the killing of animals, injury to crops, expense of building or repairing the fence, etc., in which diminution of rental value was not alleged in pleading or shown in evidence. The fact that certain injuries specified have supplied the measure of damages in particular cases in which such injuries were shown to have occurred as the result of breach of the contractual duty does not necessarily lead to the conclusion that the measure may not be supplied by other injuries arising from such cause, being natural results of such breach of obligation or such effects thereof as may be reasonably supposed to have been contemplated by the parties when the duty was assumed.

In *Lawton* v. *Fitchburg R. Co.*, 8 Cush. 230, where the measure of damages was the cost of erecting the fences according to the agreement, it was said that if the plaintiff had proved injury to his lands from want of the fences, on which no evidence was offered, another question might have been raised.

The covenant shown in the complaint is one which runs with the land. It binds the appellant, the successor of the

railroad company to which the right of way was granted and by which the covenant to construct and maintain the fence was made, and it operates in favor of the appellees, one of them being the covenantee still retaining part ownership of the land and the other being the grantee and assignee of the covenantee and his cotenant. *Toledo, etc., R. Co. v. Cosand,* 6 Ind. App. 222; *Lake Erie, etc., R. Co. v. Power,* 15 Ind. App. 179; *Midland R. Co. v. Fisher,* 125 Ind. 19, 21 Am. St. 189;*Lake Erie, etc., R. Co. v. Priest,* 131 Ind. 413; *Huston v. Cincinnati, etc., R. Co.,* 21 Ohio St. 235.

In *Chicago, etc., R. Co. v. Barnes,* 116 Ind. 126, it was held that a railroad company is bound to pay for animals killed by its trains in cases where the animals enter upon the track through the fault of the company in failing to fence a crossing in accordance with the terms. of the contract.

In *Logansport, etc., R. Co. v. Wray,* 52 Ind. 578, in the contract for the right of way the railroad company agreed to pay the landowner a certain sum per acre for the land appropriated, and to build and construct a good and sufficient fence on each side of the railway across the land, and to build and construct two good and sufficient farm crossings. The complaint alleged failure to pay and failure to construct the fence and crossings, and stated generally that the plaintiff was damaged in a certain sum. An instruction was approved whereby the court stated the measure of damages to be the cost of constructing the fences, the cost of putting in cattle-guards and farm crossings, and the amount per acre specified in the contract.

In *Indiana, etc., R. Co. v. Adams,* 112 Ind. 302, it was held that there is a right of action to recover the amount which it would fairly cost to erect such fences as the contract called for, together with any special damages which the plaintiff may have sustained.

In *Louisville, etc., R. Co. v. Power,* 119 Ind. 269, the court adhered to the rule, that "for the breach of a contract

by a railroad company with a landowner to fence its right of way, the cost of erecting the fence and also special damages for animals killed, for damage done by trespassing animals, and for the loss of pasturage, may be recovered."

In *Toledo, etc., R. Co.* v. *Cosand,* 6 Ind. App. 222, it was held that in such case the owner of the land was entitled to recover for being deprived of the use of a pasture, and for being deprived of the use of a passageway which the company covenanted to make, and that evidence of the character and condition of the land was proper to aid the jury in arriving at the correct amount of damages by reason of loss of crops and pasturage.

In *Louisville, etc., R. Co.* v. *Sumner,* 106 Ind. 55, 55 Am. Rep. 719, the deed of conveyance of the right of way recited that it was made upon the consideration of a certain sum and that the railroad company covenanted to make a stock pass and a farm crossing and to fence the strip and to locate and maintain a depot on the land. The breaches alleged were failure and refusal to establish and maintain a depot and failure and refusal to erect and maintain fences. The damages assessed included (1) the cost of erecting the fence, (2) damages for failure to erect the fence, embracing certain amounts for hogs killed, loss of pasture for three years, and loss from trespassing animals, and (3) an amount for failure to erect and maintain a depot.

In *Emmons* v. *Minneapolis, etc., R. Co.,* 35 Minn. 503, 29 N. W. 202, it was held that under a statute providing that for failure or neglect to fence its railroad, etc., the company should be liable for "all damages sustained by any person in consequence of such failure or neglect," damages might be recovered for injury done to a farm by rendering it less fit for pasturing cattle, in consequence of failure of the company to fence its road as required by the statute. The court did not decide upon the measure of damages. On a subsequent appeal in the same case, *Emmons* v. *Minneapolis, etc., R. Co.,* 38 Minn. 215, 36 N. W. 340, it was held

that the diminution in the rental value of the farm from such cause was a proper measure of damages, and that such damages were not necessarily limited to what it would cost to build a fence.

The same court, in *Nelson* v. *Minneapolis, etc., R. Co.,* 41 Minn. 131, 40 Am. & Eng. R. Cas. 234, adhered to the former decisions, and said, concerning rental value, that it "is but another form of saying 'the value of the use,' and means simply the value of the use of the land for any purpose for which it is adapted in the hands of a prudent and discreet occupant upon a judicious system of husbandry." See, also, *Emmons* v. *Minneapolis, etc., R. Co.,* 35 Minn. 503, 46 Am. & Eng. R. Cas. 236.

In *City of Chicago* v. *Huenerbein,* 85 Ill. 594, it was held that where land is wrongfully overflowed so as to deprive the owner of its use, the measure of damages is its fair rental value.

In *Huston* v. *Cincinnati, etc., R. Co.,* 21 Ohio St. 235, it was held that in an action by the vendee of the original owner against the vendee of the contracting railroad company, for failure to build fences and crossings as contracted, the rule of damages is the amount of injury to the use and enjoyment of the adjoining land, occasioned by want of such fences and crossings, during the time the railroad, or the right of way, was owned by the defendant.

Where the breach of a contractual duty or infraction of a legal right is of a continuing character, and the injury therefore is not necessarily permanent, but may cease through performance for the future of the contractual duty or legal obligation, damages for the injury already suffered may be recovered. This is a familiar rule in cases of trespass or nuisance, and in actions for breach of a covenant to repair. See *Indiana, etc., R. Co.* v. *Eberle,* 110 Ind. 542, 551; *City of Ft. Wayne* v. *Hamilton,* 132 Ind. 487, 493, 32 Am. St. 263.

In *Phelps* v. *New Haven, etc., R. Co.,* 43 Conn. 453, an

action to recover damages for the neglect of the railroad company to keep in repair certain cattle passes which it had agreed to keep in repair, it was held that for such non-fulfilment of a continuing obligation damages up to the trial, but no prospective damages, were recoverable.

In *Brakken* v. *Minneapolis, etc., R. Co.,* 29 Minn. 41, it was held that the owner of lots abutting upon a street might maintain an action for a wrongful obstruction, but the injury not being to the freehold, nor permanent in its nature, the damages should be confined to compensation for the injury up to the commencement of the suit. It was said: "It is not to be presumed that the street will be suffered to remain for all time in such improper condition. * * * We conceive the true measure of the plaintiff's damages to be compensation for the injury sustained by him from the improper condition in which the crossing was left by the defendant; or, in other words, the difference between the fair rental value of the property with the railroad crossing in its present improper condition, and its rental value with the crossing in a proper condition,—the damages to be limited to the time of the commencement of the suit." On a subsequent appeal, *Brakken* v. *Minneapolis, etc., R. Co.,* 31 Minn. 45, this rule was adhered to, and it was said that its applicability was in nowise affected by the fact that the property was not rented. See, also, *Carli* v. *Union Depot, etc., Co.,* 32 Minn. 101.

Where A rented a mill to B and agreed to make certain alterations therein, and the alterations were defectively made, it was held that the measure of damages was the value of the use of that portion of the machinery which the lessor had contracted to furnish and which by reason of the lessor's failure could not be enjoyed by the lessee; also, that the lessee was not bound to make an expenditure which would have enabled him to have the use of the machinery as contemplated by the contract. *Green* v. *Mann,* 11 Ill. 613. For the ascertainment of the value of the use the court stated

that it would only be necessary to inquire as to reasonable rental value.

In *Sinker, Davis & Co.* v. *Kidder,* 123 Ind. 528, where a boiler sold with warranty exploded, it was held, in an action on the warranty, that the rental value of the mill for which the boiler furnished power during the time it remained idle on account of the explosion was an element of damages.

In *Montgomery, etc., Soc.* v. *Harwood,* 126 Ind. 440, where the plaintiffs rented a piece of ground of the defendant for a huckster stand during a fair, and it was a part of the agreement that no ground should be rented for competing stands within designated limits, it was held that the true measure of damages for a violation of this part of the agreement would be the difference in the rental value of the ground without the competing stands and the rental with such stands.

In *McCoy* v. *Oldham,* 1 Ind. App. 372, 50 Am. St. 208, it was held that upon failure of a landlord to make repairs, grub and clear a portion of the land, in accordance with his covenant, the tenant was not bound to do so, but might rely upon the performance of the covenant, and that the measure of recovery in such case is, ordinarily, the diminution of the rental value; but if the tenant see fit to make the repairs, he may do so and recover their cost from the landlord.

When, under a contract, a fence is to be constructed and maintained by the railroad company, there is no duty resting upon the landowner to make or repair the fences. *Toledo, etc., R. Co.* v. *Burgan,* 9 Ind. App. 604.

If under a statute based upon the police power the difference in the rental value of the adjoining land may be recovered, it would seem that for the violation of a contract under which the railroad company occupies and uses its right of way such damages ought not to be denied, where they in truth measure the loss accruing from the breach.

Our statute requiring railroads to fence was enacted in 1885, after the contract here in question was made, and if the statute provides a more meager remedy than was recoverable before its enactment under a contract, and if the statute may in any case control the rights of the parties to such a contract, our statute would not have the effect of impairing the obligation of this contract.

We are not here required to decide, and we do not decide, upon any rule applicable to failure to fence as required by our statute, but we are concerned only with the question whether, if the rental value of land be actually diminished by reason of failure to perform a covenant to build and maintain a good and sufficient fence, such loss may be recovered from the delinquent party.

Upon reason and the authorities, some of which we have cited, we are of the opinion that the ascertainment of such loss may be one method of arriving at the proper damages in a particular case where such injury has been suffered. Such a covenant should be applied so as to protect and remunerate the owner fully in the sense and to the extent intended by him. Scates, C. J., in *Chicago, etc., R. Co.* v. *Ward,* 16 Ill. 522.

Under its assignment of error in overruling its motion for a new trial, there has been some argument on behalf of the appellant to which counsel for the appellees have not replied in their brief.

Referring to evidence showing defects in the fence, it is thereupon insisted that the appellees could have prevented any danger from trespassing hogs by making repairs, and could have called upon the appellant for reimbursement. We have already shown that this was not the only method by which the covenantee might seek redress for the breach of the covenant.

In further discussion of the evidence, reference is made to testimony which showed that crops were raised in certain portions of the farm during parts of the period to which the

complaint relates, and it is said that the evidence showed that a "tomato crop on a portion of the land was $65 an acre," though the place in the record where such evidence may be found is not stated. It was not necessary to a recovery that it should be proved that the appellees had been compelled to abandon their farm and to cease to cultivate it and to raise crops upon it; and the claim of the appellant in argument based upon this evidence seems to be merely that it "shows that if this were an action based on the damages which our courts have held to be the legitimate measure in such cases, there could be no recovery." The "legitimate measure" to which reference is thus made is that for which appellant had contended in the portion of its brief relating to the complaint, which we have already sufficiently discussed.

A witness shown to be qualified to testify concerning the rental value of the land testified that with a good fence between the land in question and the appellant's right of way, during the period mentioned in the complaint, the rental value per year of the farm would have been $4 per acre, and if fifty-five acres of the farm were not protected from stock coming in from the railroad right of way, except by the railway fence between the farm and the right of way, and during the time in question that fence would not turn hogs, and part of the time would not turn sheep or cattle, the fair rental value per acre would have been $1 less per year.

On cross-examination of this witness, he was asked by the appellant the following questions, objections to which were sustained: "Suppose that during the years 1894 and 1895, two of the years that have been mentioned, this land was rented for cash at $5 per acre, would you say that that was the fair rental value, in your judgment?" "If, with the fence in the condition that it is now, or was at the time this suit was brought, and had been for some years previous, this land was rented for cash rent at $5 per acre, what would you say as to that being its fair cash rental value?"

We have not been referred to any place in the record where we might find any evidence to which the hypotheses in these questions would be pertinent, or any evidence showing that the witness knew the condition of the fence referred to in the second question. The witness had testified that $4 per acre would be a fair rental value if the fence were good. If it was meant to ask him simply if $5 per acre would be a fair rental value, the appellant could not have been harmed by excluding the question. The witness was asked, in effect, if the appellees sometimes succeeded in obtaining a certain larger rent per acre than that which the witness had said the land, in his opinion, was worth on the average, whether such greater rent was a fair rental value. The inference as to value to be drawn from a price received is for the jury and not for the witness.

The questions did not call for facts nor for opinions based upon facts within the knowledge of the witness or hypothetically assumed from which the opinions asked for might be legitimately drawn by the witness, and they were of a merely argumentative character.

Objection is made to an instruction given to the jury, without specifying its number or succinctly stating its substance, as directed by the rules of this court, and it is said, by way of objection thereto, that it "was in line with the theory of the plaintiff's complaint, and, as we maintain, stated erroneously the measure of damages." If what we have said upon that subject be correct, the objection to the instruction ought not to prevail.

The court refused to give one of the instructions proposed by the appellant, as follows: "If the fence in controversy was out of repair during the years named in the complaint, or some portion thereof, and if hogs and other stock breached through said fence and damaged the crops of the plaintiffs, they could not recover for such damages in this case."

The court, among the instructions given, charged the

jury that the burden was upon the appellees to prove the material averments of their complaint by a fair preponderance of all the evidence, and that unless they had done so they could not recover; also, that if the appellees had proved to the satisfaction of the jury that the appellant had failed to maintain a fence, under the agreement contained in the deed, that was sufficient to turn horses, cattle, sheep, hogs, and other domestic animals, and that the lands owned by the appellees had been injured thereby, the measure of damages for such injury would be the difference in the fair rental value of the land adjacent to said right of way with a fence maintained between the same and said lands that would turn horses, cattle, sheep, hogs, and other domestic animals, and a fence such as the evidence, in the judgment of the jury, showed the appellant had maintained along said right of way separating the same from the lands of the appellees; also, that if the jury found for the appellees, they would assess to them as damages such an amount as would in the judgment of the jury compensate the appellees for their injury under the rules of law stated to them by the court.

Having thus properly and fully stated to the jury the measure of damages to be observed in arriving at their verdict, it was not available error for the court to decline to state also to them that one other particular kind of loss, which, like various other kinds, might have been the basis of damages under other forms of complaint, was not to be taken as the measure in this case.

Another instruction requested by the appellant and rejected was as follows: "The theory of the complaint is that the plaintiffs have lost the rents of said lands by reason of the defective condition of the defendant's fence; and the court instructs you that if said lands were not, in fact, rented, or for rent, and that the plaintiffs received from said lands crops raised thereon equal to the rental value thereof, then the plaintiffs can not recover."

The theory of the complaint was properly stated by the

court in the instructions given, and it was not properly stated in this rejected instruction. If the rental value of the land was depreciated by the breach of the covenant to maintain the fence, the appellees might recover therefor, whether or not the lands were actually rented or offered for rent. Such injury might be established without showing that no crops were received from the lands. It might be possible, notwithstanding the defectiveness of the fences, but with extra watchfulness, labor, and expense, to raise crops equal to what would be the rental value of the lands with fences in good condition, or, with or without such extra watchfulness, labor, and expense, to raise crops which, by reason of the peculiar circumstances of the sale thereof, actually equaled the rental value of the lands as it would have been with the fences in good condition. But such facts would not go to the credit of the appellant so as to prevent a recovery for its breach of covenant. However, it will be observed that the "rental value" referred to in the instruction is not confined to well-fenced lands, but is applied to the lands as they were actually fenced; and the court was called upon to tell the jury that the appellees could not recover, notwithstanding the defective condition of the fences, if from the lands defectively fenced the appellees received crops equal to the rental value of the lands with the fences thereof in their actually existing defective condition.

The judgment is affirmed.

## DISSENTING OPINION.

HENLEY, J.—As is stated in the majority opinion in this case, the action begun by appellees in the lower court was for damages arising from the breach of an agreement made by appellant to fence its right of way through the lands of appellees. The allegation in the complaint in regard to appellant's agreement in the matter of fencing is that appellant "agreed in said deed to build and perpetually maintain, on the line dividing the right of way conveyed from

the residue of said Griffin farm, a good and sufficient fence against all hogs, cattle, horses, sheep, and other stock of every description." It is then alleged that appellant has wholly failed to build and maintain such fence from the 1st day of January, 1891, up to the time of the commencement of this action, by reason whereof the *rental value* of appellees' land has been greatly reduced, to wit, in the sum of $75 per year, to appellees' damage in the sum of $450, for which they demand judgment. I do not think the majority opinion in this case holding that for a breach of the contract to fence a right of way, as averred in this complaint, the landowner over whose farm the same is laid may recover as damages diminution of the rental value of the farm caused thereby, is in accord with the decisions of the Supreme Court of this State upon this question, nor is it sustained either by the eminent writers upon the subject of damages. It will be observed that the only damage alleged in appellees' complaint as growing out of a breach of the contract is a diminution in the rental value of the entire tract of land.

The measure of damages for the breach of such a contract as is declared upon in the complaint has been settled by the adjudications in this State, and in the language of the Supreme Court is as follows: "For the breach of a contract by a railroad company with a landowner to fence its right of way, the cost of erecting the fence, and also special damages for animals killed, for damages done by trespassing animals, and for loss of pasturage may be recovered." *Louisville, etc., R. Co.* v. *Power*, 119 Ind. 269; *Louisville, etc., R. Co.* v. *Sumner*, 106 Ind. 55, 55 Am. Rep. 719; *Logansport, etc., R. Co.* v. *Wray*, 52 Ind. 578; *Toledo, etc., R. Co.* v. *Cosand*, 6 Ind. App. 222.

The complaint in the case at bar does not seek to recover for the cost of building or maintaining the fence, nor for any special damage done by reason of the breach of the contract. This, we think, under the rule established by the decisions of our courts, makes the complaint fatally de-

fective. There is, under the common law, no duty resting upon railroad companies to fence their tracks, and hence their liability to fence their tracks arises solely from contract or by statute. *Ft. Wayne, etc., R. Co.* v. *O'Keefe,* 4 Ind. App. 249.

The rule for the assessment of damages under a contract to fence does not differ from what it would have been if the duty to fence had been imposed by statute. *Louisville, etc., R. Co.* v. *Sumner, supra; Lake Erie, etc., R. Co.* v. *Power,* 15 Ind. App. 179. In the last cited case I think the question arising upon the complaint is settled adversely to appellees' contentions. It seems to me that the law as announced by the Supreme Court is most reasonable and just. The landowner was not required to fence the right of way in case the railroad company refused or neglected to erect the fence, but he can, if he so desires, erect a fence such as the contract contemplates, and recover the cost thereof from the railroad company in an action for damages based upon a breach of the contract. If he chooses to allow the right of way to remain open, then he can collect in an action for a breach of the contract *special damages* for animals killed, damages done by trespassing animals, and for loss of pasturage. The option was with the appellees whether to build the fence or to accept only such damages as they could legally recover for a breach of such a contract as they had with appellant.

It is said in 2 Sedgwick on Damages, at §631: "For the breach of an agreement to build fences and cattle-guards, the measure of damages is the cost of building them." But our courts have extended this rule so as to cover special damages, as heretofore set out, which in all cases must be alleged and proved. At the time the contract in suit was entered into, to wit, in June, 1881, we had no law in this State imposing a duty upon railroad companies to fence their rights of way. The law in force at that time simply exempted the railroad companies from certain liabilities in

case such companies erected and maintained good and sufficient fences along the line of their right of way. But it was never held by any of the courts of this State, either under the statute, or in an action for the breach of a contract to fence, that the plaintiff could recover such general damages as diminution in rental value of the whole or any part of the premises through which the railroad passed. Is it not then reasonable to infer, and must we not infer, that the parties to this contract at the time it was executed only contemplated such damages from its breach as under the existing law they could have avoided by erecting and maintaining the fence under the terms of the statute then in force ? One of the familiar rules of law is that a party violating the terms of his contract contemplates only such damages as are the direct result of the breach, and only such damages are recoverable as were reasonably within the contemplation of the parties at the time the agreement was made. And so in the case of *Dorwin* v. *Potter*, 5 Denio 306, where A leased to B a dairy farm, agreeing as a part of the consideration for the lease to put certain barns on the premises in good repair, but failed to comply with his agreement, and in an action against A for a breach of the contract it was held that B could recover the amount it would cost to repair the barns but that he could not recover damages for the decrease of the produce of his dairy resulting from the condition of the barns, such damages being, in the language of the opinion, "altogether too remote and contingent."

In this case the agreement, by the averments of the complaint, being to erect and maintain a *stock proof fence,* the decrease in the rental value would be contingent upon the owner suffering some of the damages for which in the same action for a breach of the contract he would be, under our decisions, entitled to recover. This would make such damages as decrease in rental value, in an action for the breach of the contract in suit, not only speculative, but remote. The decisions of the higher courts of Minnesota and Iowa cited

by counsel for appellees, and which seem to aid the theory of the complaint, will be found, upon examination, to be founded upon statute. Thus the principal cases relied upon by appellees' counsel, the cases of *Emmons* v. *Minneapolis, etc., R. Co.,* 38 Minn. 215, and *Emmons* v. *Minneapolis, etc., R. Co.,* 35 Minn. 503, were not founded upon a breach of a contract to fence against stock, but were, under the statute of the state of Minnesota, which is as follows: Gen. Stat. of Minn., 1878, c. 34, §57: "Any company or corporation operating a line of railroad in this state and which company or corporation has neglected to fence said road    *    *    * shall hereafter be liable for all damages sustained by any person in consequence of such failure or neglect." The language of this statute being broad and general was held to cover any decrease in the value of the real estate caused by a failure to comply with its terms, and under the same statute it was held that the railroad company must respond in damages caused by death of a child *non sui juris* who had wandered upon the company's right of way where the same was not fenced and was killed by a locomotive passing over the road.

Under our statute the contrary has been expressly held by this court. *Baltimore, etc., R. Co.* v. *Bradford,* 20 Ind. App. 348, 67 Am. St. 252.

Admitting for the purpose of considering appellant's motion for a new trial that the complaint stated a cause of action against appellant, I will consider the action of the lower court in overruling the motion for a new trial. Rent is defined as being a definite compensation or return reserved by a lease, to be made periodically or fixed with reference to a period of time, payable in money, produce, other chattels, or labor, for the possession and use of land and buildings. Century Dictionary. Diminution of rental value is the diminution of the compensation or return to which the lessor is entitled from his tenant or lessee. This action was brought to recover damages for the diminution in the

rental value of the whole tract of land, through which appellant's road passed, for six years immediately preceding the commencement of the action. The evidence wholly fails to sustain the judgment of the lower court. The evidence of the appellees is they occupied the land themselves except one year during the six years before the filing of the complaint. That during one year the land was rented for cash rent. That the lessee paid $5 per acre cash rent for the land, and under the evidence of both appellees this was the full rental value of the land with a fence along appellant's right of way such as the contract called for. Appellee Cory, sometime during said six years married the daughter of his co-appellee, and moved upon said land after the tenancy of one year had expired. Appellees testified that they made no attempt to rent the farm to any one; that it was not offered for rent; that the only year the farm was rented the tenant contracted with them at the price asked of him. There was no evidence that appellees used this real estate for rental purposes, or that they had lost anything whatever in diminution of rental value, and there is no charge nor attempt to prove an injury to the freehold. For the reasons stated I think the judgment of the lower court ought to be reversed.

Wiley, J., concurs in the dissenting opinion.

## ON PETITION FOR REHEARING.

BLACK, J.—In passing upon the appellant's petition for a rehearing, it is thought to be not improper to remark that upon the original hearing there was no discussion by counsel of the question as to the sufficiency of the evidence beyond the matters mentioned and disposed of in the principal opinion.

The petition for a rehearing, after careful reëxamination of the case, is overruled.