# CHICAGO & SOUTHEASTERN RAILWAY COMPANY
## *v.* McEWEN.

[No. 4,832. Filed October 6, 1904. Rehearing denied January 24, 1905. Transfer denied April 6, 1905.]

1. COVENANTS.—*Running With the Land.—Fences.—Railroads.*—A covenant by a railroad company to build fences, cattle-guards and crossings, in consideration of the grant of a right of way, runs with the land and is enforceable against such company's grantee. p. 258.
2. SAME.—*Running With Land.—Who Bound.*—All persons claiming title through or under a deed imposing a burden upon the land are bound thereby. p. 258.
3. SAME.—*Consideration.*—The grant of a right of way in consideration of the building and maintenance of fences, cattle-guards and crossings is supported by a valuable consideration. p. 258.
4. TRIAL.—*Stenographer.—Refusal to Appoint.*—The refusal of the court to appoint an official reporter to take the testimony in a cause is no reason for a new trial. p. 259.

5. COVENANTS.—*To Do One's Duty.*—*Consideration.*—A covenant by a railroad company to fence and ditch its right of way, and maintain fences, cattle-guards, farm crossings and an underground passage-way, in consideration of the grant of such right of way, is supported by a consideration, though some of the acts required in such covenant are imposed upon such company by law.  p. 259.

6. LIMITATION OF ACTIONS.—*Covenants.*—*Breach.*—The twenty-year statute of limitations applies to an action for the breach of a covenant.  p. 259.

7. COVENANTS.—*Running With the Land.*—*Breach.*—*Measure of Damages.*—The measure of damages, where not otherwise provided, for the breach of a covenant running with the land is the amount of loss in the rental value of such land.  p. 260.

8. SAME.—*Breach.*—*Liquidated Damages.*—*Penalty.*—Where the parties provide in a covenant that for a breach thereof the covenantor shall pay the covenantee $1,000 as damages, and such sum does not appear disproportionate to the loss which might be occasioned by a breach thereof, such amount will be considered as liquidated damages and not a penalty.  p. 261.

9. DAMAGES.—*Liquidated.*—*Covenants.*—*Demand for Performance.*—*Interest.*—Where a covenantee makes a demand for the performance of a covenant, and such covenant prescribes a certain sum as liquidated damages in case of breach, the covenantee, in case of nonperformance, is entitled to interest on such damages from the date of such demand.  p. 262.

10. APPEAL AND ERROR.—*Damages.*—*Wrong Measure.*—*Right Result.*—Where the trial court erroneously gave a judgment for actual damages where liquidated damages had been provided in the contract, but the judgment was for practically the right amount, the judgment will not be reversed.  p. 262.

From Parke Circuit Court; *A. F. White,* Judge.

Action by Mary C. McEwen against the Chicago & Southeastern Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*U. C. Stover* and *Harry Crawford,* for appellant.
*Elwood Hunt, D. P. Williams* and *J. G. Williams,* for appellee.

COMSTOCK, J.—Appellee filed her complaint in three paragraphs against appellant. In the first and third she sued for breach of covenants contained in a deed and contract, made part thereof, for the right of way across appellee's

lands for the Midland Railway Company's track, appellant being the successor of said Midland Railway Company. The second paragraph is for stock killed and property destroyed, but, as no finding or recovery was had thereon, further reference to it is unnecessary. A demurrer to each paragraph of the complaint was overruled, and answer of general denial filed, and special finding of facts and conclusions of law against appellant stated. Appellant's motion for a new trial was overruled, and judgment for $1,-510.87 rendered in favor of appellee on the conclusions of law.

Appellant contends upon this appeal that the court erred (1) in overruling its demurrer to the complaint; (2) in its conclusions of law; (3) in refusing a new trial because; (a) the damages assessed were excessive; (b) the request of appellant to provide an efficient stenographer to take down the evidence at the trial was refused; (c) the decision of the court was contrary to law.

The facts specially found are substantially the same as those alleged in the first and third paragraphs, namely: On the 7th day of April, 1891, the plaintiff Mary C. McEwen was the owner in fee of a tract of land in Parke county, Indiana, containing 240 acres. On said day she conveyed by warranty deed to the Midland Railway Company a strip of ground forty feet in width across and over the same, containing three acres, more or less. The consideration for said right of way was the sum of $1,300 and the performance, by the said Midland Railway Company, as a part of the consideration for said right of way, of the stipulations, conditions and covenants agreed by it to be performed, of a certain contract and agreement in writing, which written agreement was of even date with said deed. By the terms of said written contract said railway company, as a part of said consideration, agreed with the plaintiff for itself, its successors and assigns, and was, as soon as the railway company should have laid its track over

and across the right of way described in said deed, to erect and maintain in good repair, and to rebuild when necessary, at its own expense, but for the benefit of plaintiff, along both sides of said right of way on the line between said right of way and said adjacent lands of plaintiff, a good and substantial board fence sufficient to turn all kinds of stock, the manner in which said fence should be constructed being particularly described; that said company agreed with plaintiff for itself, its successors and assigns, that it would put in and maintain in good repair, and rebuild when necessary, all farm crossings, across said right of way for the convenience of plaintiff, as might be by her deemed suitable and necessary, and at the points and places she might designate, and within a reasonable time after such selection. The said crossings were to be constructed in connection with gates and cattle-guards. The gates to be hung on good hinges and to have strong hooks to fasten them with, and to be set opposite each other. Good fences forming wings or guards were to be built from each side of each gate to the track of the railroad; the cattle-guards to be placed at each end of the crossing so as to prevent stock from running on the track in using the crossing; the whole to be so arranged as to form a safe, easy and commodious farm crossing. Said Midland Railway Company further agreed with plaintiff for itself, its successors and assigns, to put in and maintain in good repair, and rebuild when necessary, at its own expense, an underground passageway for stock and cattle at a convenient place to be selected by plaintiff, and to put the same in within a reasonable time after such selection was made by her. It further agreed to construct ditches and culverts along said right of way so as to render the adjacent lands of the plaintiff free from any damage from water, and to make and maintain a good and substantial gate to said underground passageway. It further agreed with the plaintiff for itself, its successors and assigns, to erect a good and substantial cattle-guard at the Rockville

and Bellmore gravel roads, and to erect and maintain a good, substantial gate just east of the track on the Bellmore gravel road, to take the place of a gate then used at that point. All of said farm crossings, underground passageways, fences, gates and cattle-guards were to be constructed and maintained by said company in a good, workmanlike, substantial, safe and convenient manner. Said company agreed with plaintiff for itself, its successors and assigns, to put in a switch track and all usual and necessary appurtenances at such place or point and on such ground as might be selected by plaintiff, free from any cost to her, and within a reasonable time after such selection. Said railway company agreed with plaintiff, for itself, its successors and assigns, to pay her all damages which it might do to the wheat crop then growing on said land, and for any damage it might do at any time to stock or premises in constructing or operating its road, and that the material of all fences on said premises should be the property of said plaintiff. It also agreed to furnish plaintiff a life pass on said road as soon as trains should run over said road. It was agreed by and between the parties to said contract that said written contract should be considered in connection with the provisions and conditions of said deed, and that the failure of said railway company, its successors or assigns, to comply with any or all of the covenants of said contract and deed, would render said company, its successors or assigns, liable in damages therefor in the sum of $1,000; that said deed and written contract were duly executed on said 7th day of April, 1891; that said contract was duly recorded in the proper record in the recorder's office of Parke county, Indiana, on the 29th day of May, 1891; that said railway company entered upon said right of way across the lands of plaintiff, took possession of the same, began constructing the track upon the same, and had nearly completed the construction of such track by the 20th of October, 1891; that on said 20th day of October, 1891, said Mid-

land Railway Company, by a proper deed of conveyance duly executed, sold and transferred all its said railway and railway property, including said right of way over said lands, to the defendant, the Chicago & Southeastern Railway Company; that said defendant took said deed of conveyance with full knowledge of the terms, conditions and covenants contained in said deed and written contract between the plaintiff and said Midland Railway Company dated April 7, 1891; that shortly after said conveyance of said railway and said right of way to the defendant, to wit, in the year 1892, said defendant completed the construction of said railway track along and upon said right of way, and extended and completed said railway to the city of Brazil, Indiana, from the city of Anderson, Indiana, and since said time has been in possession thereof and controlling and operating same; that in 1891, and prior to October 20 of said year, the plaintiff designated and pointed out to said Midland Railway Company the places at which she desired farm crossings to be erected in accordance with said contract; also the place under said track where she desired said company to make an underground passageway in accordance with said contract. In 1892 she in like manner pointed out and designated to said defendant the same places where she desired farm crossings and an underground passageway to be made by said defendant in accordance with said contract. In 1891 said Midland Railway Company put at the farm crossings designated, on the ties of said track, some heavy plank for crossings, but they were not spiked nor nailed down nor otherwise permanently secured; they were not convenient nor suitable farm crossings, but temporary, and inconvenient for crossings by tenants and others on said farm. In 1899 plaintiff designated to defendant certain places over said track on her said lands where she wished farm crossings to be erected. In constructing said railway said Midland Railway Company left a passageway under said track, at a place designated by

plaintiff, sufficient to allow sheep and hogs to pass under said track, but not of sufficient height and depth to permit horses and cattle to pass thereunder. The defendant put in a cattle-guard at the south side of plaintiff's lands at the Bellmore road, but not of sufficient depth or construction to turn stock; it allowed the same to become out of repair and remain inefficient to turn stock. The defendant in constructing said railway left a pit or excavation on the west side thereof in the right of way in which water accumulated from time to time and seeped through the railroad grade under said track and onto some of the tillable land on the east side of said right of way, causing said tillable land to be wet to some extent at certain portions of the year; that said railway crosses a small waterway in said lands, and said Midland Railway Company constructed a culvert or trestle, about twelve feet long and about one foot in height, over said waterway, which was above the water of said creek in ordinary times; that in times of freshet or high water said culvert would choke up and back water along the west side of said railway embankment, and the same would flow over said track and over and upon said plaintiff's lands; that neither said Midland Railway Company nor defendant at any time built any part of any kind of a fence along either side of said right of way over plaintiff's lands along a line between said right of way and the adjacent lands of plaintiff, nor have they, or either of said railway companies, erected farm crossings with gates hung on good hinges, and with strong hooks to fasten them, set opposite each other; nor have they erected any gates at all; nor have said railway companies, or either of them, constructed ditches along said right of way in such manner as to render said adjacent lands free from damages by reason of water along said right of way; nor have said railway companies erected an underground passageway, fences, gates and cattle-guards and wing fences, and maintained them in a good, workman-

like, substantial, safe and convenient manner; that often during the time since the construction of said railway plaintiff has requested the defendant to construct fences along said right of way, cattle-guards and farm crossings in accordance with the said written contract, but the defendant has failed and refused to do so. Other facts are found relating to damages, but they need not, in the view of the case taken, be set out.

1. Appellant argues that there can be no recovery against it on the contract executed by the Midland Railway Company for the reason that mere knowledge of an agreement made by the vendor company did not charge the purchaser with the duty of performing what its predecessor failed to perform; that, therefore, the conclusions of law were erroneous. This claim can not be allowed. The rights of appellant rest upon the covenants of the deed and contract. "Subsequent grantees of the original covenantor become bound to perform the agreement. The covenants pass with the land." *Midland R. Co. v. Fisher* (1890), 125 Ind. 19, 8 L. R. A. 604, 21 Am. St. 189.

2. The acceptance of the deed imposed a burden upon the land which was not only binding upon the original grantee, but runs with the title, and is equally binding upon all who claim through the original grantee. *Lake Erie, etc., R. Co. v. Priest* (1892), 131 Ind. 413; *Toledo, etc., R. Co. v. Cosand* (1893), 6 Ind. App. 222; *Lake Erie, etc., R. Co. v. Power* (1896), 15 Ind. App. 179; *Lake Erie, etc., R. Co. v. Griffin* (1900), 25 Ind. App. 138; *Cambria Iron Co. v. Union Trust Co.* (1900), 154 Ind. 291, 48 L. R. A. 41.

3. In the case at bar the facts averred and specially found show that the covenants in the deed and in the contract which is made a part thereof were covenants to construct and maintain fences, cattle-guards, farm crossings and an underground passageway. They were real covenants running with the land, and, being made by the Midland Railway Company in part consideration of the

conveyance to it by appellee of a strip of land for right of way, they are supported by a valuable consideration. There was no error in the conclusions of law.

4. The next point made by appellant—that it was deprived of a fair and impartial trial because the court refused to provide an official reporter to take down the evidence—is not well taken. In *Adams* v. *State* (1901), 156 Ind. 596, it is said: "The taking down of the evidence and the noting of exceptions, under this latter act [Acts 1897, p. 244], is not limited to shorthand reporters to be appointed by the court, but such services may be performed by any one." So that the failure of the court to make the appointment requested did not prevent appellant from having such evidence taken down.

5. It is contended by appellant that the agreements to fence and ditch were promises to perform acts which the promisor was already bound in law to perform and were without consideration, and that therefore the demurrers to the complaint should have been sustained. *Shortle* v. *Terre Haute, etc., R. Co.* (1892), 131 Ind. 338, and other cases are cited in this connection. In the case named the consideration alleged was merely to fence the right of way, and the court held that a promise to perform a duty imposed by law was no consideration for a contract. The covenants in the deed and agreement under consideration are to build and maintain fences, cattle-guards, farm crossings, particularly described, and to construct and maintain an underground passageway. The facts before us are not analogous to those in the case cited.

6. Points four and five relate to the measure of damages, and are disposed of in the conclusion which follows. As to point six—that the damage to appellee's real estate which accrued more than six years prior to the commencement of this suit is barred by the statute of limitations—while relating to the measure of damages in the connection in which it is raised, we deem it proper to say that the ac-

tion being for a breach of covenants contained in the deed, covenants running with the land, the twenty-year statute and not the six-year statute governs. *Hyatt* v. *Mattingly* (1879), 68 Ind. 271.

Upon the facts found the court concluded as a matter of law that the plaintiff "is entitled to recover of and from the defendant damages in the sum of $1,510.87, the amount of damages to the rental value of said real estate for eight years and six months last past and prior to January 3, 1901, the time of the commencement of this action.

By the contract entered into on April 7, 1891, it is provided that "Said Midland Railway Company, having this day received a deed from said Mary C. McEwen for a right of way for railroad purposes over the land of said Mary C. McEwen as in said deed described, now as a part and additional consideration therefor, the said Midland Railway Company for itself, its successors and assigns, covenants and agrees with the said Mary C. McEwen as follows:  *  *  *  It is expressly agreed and understood betwen the parties hereto that the provisions of this contract shall be construed in connection with the provisions and conditions of a deed for right of way from Mary C. McEwen to said company, of even date herewith, and that a failure to comply with any or all of the covenants and agreements herein or in said deed, by said railway company, its successors or assigns, shall render the said company, its successors or assigns, liable to said Mary C. McEwen in the sum of $1,000 as damages therefor."

7.    Appellant contends that the limit of liability is fixed by the contract, and the sum fixed is recoverable as liquidated damages. Appellee contends that the measure of damages for the breach of the covenants is the loss to appellee of the use of her lands, which use the covenants are designed to preserve; that the pecuniary loss of the use of the land is the amount of the decrease in its rental

value, citing *Louisville, etc., R. Co.* v. *Sparks* (1895), 12 Ind. App. 410; *Lake Erie, etc., R. Co.* v. *Lee* (1896), 14 Ind. App. 328; *Lake Erie, etc.; R. Co.* v. *Griffin* (1900), 25 Ind. App. 138; *Louisville, etc., R. Co.* v. *Sumner* (1886), 106 Ind. 55, 55 Am. Rep. 719. The rule laid down in the foregoing cases applies where the parties have not stipulated in advance the amount to be paid for the breach of the covenants.

8. In the case under consideration the parties, at the time they entered into the contract, determined what compensation the one should make the other for its violation. This they were competent to do. The sum they fixed is the limit of recovery, although the actual damages may be greater. Upon the subject of damages the following language is used in *Jaqua* v. *Headington* (1888), 114 Ind. 309: "Where the sum named is declared to be fixed as liquidated damages, and is not greatly disproportionate to the loss that may result from a breach, and the damages are not measurable by any exact pecuniary standard, the sum designated will be deemed to be stipulated damages." Hale, Damages, p. 137, says: "Where damages can be easily and precisely determined by a definite pecuniary standard, as by proof of market values, but the parties have stipulated for a much larger sum, such sum will usually be held to be a penalty; for it is evident that the principle of compensation has been disregarded." The actual intention of the parties, so far as the same can be reasonably and fairly ascertained from the language of the contract and from the nature of the circumstances of the case, will determine the construction to be given to the contract. *Bird* v. *St. John's Episcopal Church* (1900), 154 Ind. 138, and cases cited; *Benner* v. *Magee* (1904), 34 Ind. App. 176. The loss which might result to appellee by reason of the breach of the agreement considering the number and variety of its conditions can not be easily and precisely determined by a definite pecu-

niary standard; nor can we say that the amount fixed is greatly disproportionate to the loss; and, so applying the rule, the amount agreed upon by the parties should govern.

9. Appellee is entitled to interest on the fixed sum from the time when the money should have been paid—when the right of action accrued. 1 Sutherland, Damages (2d ed.), §329. That right accrued after the demand was made by appellee for the performance of the contract. So that instead of the rental value being made the measure of damages, the measure should be the $1,000, with interest at six per cent. per annum for the time found by the trial court, aggregating $1,510.

10. The court erred in its conclusions of law, but the difference between the amount adjudged by the court and $1,510 is too small to warrant a reversal.

Judgment affirmed.