PERRI *v.* TASSIE.

1. Physicians and Surgeons—Medical Standards of a Locality— Departure—Evidence.

> In order that plaintiff establish liability of a defendant for malpractice because of his departure from the average practice of the locality incident to an appendectomy, plaintiff must furnish evidence of the medical standards for the locality from which the jury could properly find that defendant failed to provide the course of treatment which the law expected of him.

2. Witnesses—Qualifications of Experts—Cross-Examination.

> The usual practice in presenting expert witnesses is to permit opposing counsel who challenges the qualifications of the witness to cross-examine on this point before the witness is asked to state his opinions.

3. Same—Competency of Experts—Discretion of Court.

> The question of competency of an expert witness is for the court to determine and he must decide within the limits of a fair discretion whether the experience of the supposed expert had been such as to make his opinion of any value.

4. Evidence—Opinion Evidence.

> Opinion evidence may not be given by one who has no knowledge or experience.

5. Physicians and Surgeons—Malpractice—Expert Witness— Qualifications.

> In action to recover damages for malpractice incident to appendectomy, refusal of trial court either to strike or to caution jury to give no weight to testimony of doctor who had been admitted to practice in this State upwards of 35 years prior to appearance as expert witness at trial, had practiced for short intervals in numerous other communities in other States and foreign countries, but had not performed an operation for 10 or 12 years, had never witnessed an operation in the community involved, and had not practiced except as a consultant to some attorneys, *held*, reversible error.

6. Evidence—Photographs—Changes.

> In order that a photograph be admissible in evidence, there should be a substantial identity in the person, place or thing photo-

graphed and that which the jury are to consider in the case and since it is difficult, if not impossible, to obtain a photograph before a change has taken place, such change must not have destroyed the substantial identity and should be carefully pointed out and brought to the jury's attention to render the photograph admissible.

7. SAME—ADMISSIBILITY OF PHOTOGRAPHS—DISCRETION OF COURT.
The admissibility of a photograph in evidence is largely within the discretion of the trial judge.

8. SAME—PHOTOGRAPH OF INCISION SCAR AFTER SUBSEQUENT OPERATION—INSTRUCTIONS.
Photograph of scar for incision in appendectomy, taken after a second operation thereafter performed in which the incision was elongated, *held*, admissible in action for malpractice incident to appendectomy where jury were instructed that it was not admissible to show length of incision at time of operation by defendant and that the photograph had been taken of plaintiff's abdomen during the trial of the case.

CHANDLER, WIEST and BUTZEL, JJ., dissenting in part.

Appeal from Wayne; Webster (Clyde I.), J. Submitted January 3, 1940. (Docket Nos. 54, 55, Calendar Nos. 40,926, 40,927.) Decided June 3, 1940.

Separate actions in case by Helen Perri and Rocco Perri against Dr. Ralph N. Tassie, individually and as proprietor of and doing business as the Saratoga General Hospital, for damages for alleged malpractice. Cases consolidated for trial and appeal. Verdicts for plaintiffs. Remittiturs filed by plaintiffs. Judgments for plaintiffs. Defendant appeals. Reversed with new trial.

*Walter M. Nelson,* for plaintiffs.

*Douglas, Barbour, Desenberg & Purdy (Neal Fitzgerald,* of counsel), for defendant.

Butzel, J. (*dissenting in part*). Rocco and Helen Perri brought separate actions against Dr. Ralph N. Tassie for malpractice. They charged that he failed to meet the standard of care required of physicians in Detroit and similar communities in performing an appendectomy on Mrs. Perri, in that the operation was improperly performed, that he did not properly close and suture the wound, and that he was derelict in his duty as to postoperative care. The cases were consolidated for trial but separate verdicts and judgments were rendered for the respective plaintiffs. The cases are brought here for review on one record.

Defendant conducted a private hospital in the city of Detroit. Mrs. Perri visited him professionally, complaining of recurrent sharp pains in her right side. She was a rather robust, hard-working woman, the mother of 11 children, 8 of whom were living at the time of the trial. Defendant advised that an appendectomy be performed promptly, and she entered his hospital for that purpose. The declaration alleges that in order to remove the appendix, defendant made an unnecessarily long and harmful incision in the median line of her abdomen and that he "did insufficiently close the said incision and did wholly neglect to suture, close, bind and hold the same and did fail to sew up the abdomen or close the incision he had made in plaintiff, and although plaintiff was in the exclusive care and in the hospital of defendant for a month immediately following the said operation, said defendant never completed the said operation, sewed up the said incision or closed the said wound, and when plaintiff inquired concerning her condition and endeavored to consult with defendant thereon, well knowing the said statements to be false and untrue or making them recklessly without any foundation in fact, said defendant advised that it was of no use or avail to complete the said operation

and close the said incision because plaintiff was afflicted with an internal cancer and would shortly die, all of which said defendant well knew or should have known was cruelly misleading and untrue, and said defendant neglected and refused to give this plaintiff the required and usual aftercare and neglected and refused to properly care for or treat her.'' It is claimed that a ventral hernia resulted from defendant's alleged neglect.

Mrs. Perri testified that defendant saw her at no time during the first week after the operation, and only a few times during the entire month while she was in his hospital. She stated that on the seventh day following the operation, a nurse removed the clamps from the site of the incision, and almost immediately thereafter she felt the wound open beneath the bandages, and that she had to hold back with her hands the bulging abdominal organs until Dr. Tassie's assistant approximated the edges of the incision with adhesive tape. At the end of four weeks she was permitted to go home and was able to walk to an automobile with the assistance of two members of her family. After about a month in bed at home, she went to defendant's office, complaining that her stomach was ''out.'' She claims that defendant told her that it would take about two years for the condition to heal. She made five or six more visits within a short period after she left the hospital. About two years later, Dr. Alfred A. Thompson repaired the hernia by opening the wound and bringing the various parts together with proper sutures.

Defendant denied the claims of plaintiffs. He insisted that he saw Mrs. Perri daily, that he properly closed the wound although it was necessary to insert a drainage tube, that he made no statements to the effect that suturing the wound was needless because death from cancer was imminent and at any rate the

cancer would prevent healing, and that the hernia did not result from any fault on his part.

Plaintiffs' counsel admitted in court that there was no complaint because of the mid-line incision, although their medical witness testified that "appendicitis, strictly appendicitis, is not performed in the median line," but "it is performed over the spot in the abdomen called McBurney's spot, between the umbilicus and the prominent bone in the hips."

Defendant assails the judgments on various grounds. He contends that competent expert evidence of malpractice was wanting. Plaintiffs claim that the judgments should be sustained even if we hold the claimed expert lacked the necessary qualifications, because the conduct charged, if true, was such that "even the merest tyro would know was improper." (Wiest, J., in *Ballance* v. *Dunnington*, 241 Mich. 383 [57 A. L. R. 262]). While we have generally insisted that the plaintiff in a malpractice suit produce competent evidence by experts that the defendant's acts were not in accordance with the recognized standards of practice of the profession in the same or similar communities (*Miller* v. *Toles*, 183 Mich. 252 [L. R. A. 1915 C, 595]; *Wood* v. *Vroman*, 215 Mich. 449; *Czajka* v. *Sadowski*, 243 Mich. 21; *Rytkonen* v. *Lojacono*, 269 Mich. 270; *Rubenstein* v. *Purcell*, 276 Mich. 433), expert testimony has been dispensed with where no question of skill or judgment, or of practice beyond the knowledge of laymen is involved. *Ballance* v. *Dunnington, supra; LeFaive* v. *Asselin,* 262 Mich. 443. See, also, *Paulen* v. *Shinnick,* 291 Mich. 288.

While testimony that defendant admitted that he did not suture the wound at all because the patient had cancer and would die anyway might be sufficient without the aid of experts to justify the jury's conclusion of malpractice, a point we do not now deter-

mine, plaintiffs relied in the main on proof that the operation and aftercare were not in accordance with the professional standards of the community, and they sought to produce medical testimony on the subject. The jury were instructed to find for defendant if they were unable to determine the usual and ordinary practice from the evidence produced. The experts who testified for defendant were unanimous in their conclusion that there was no departure from the average practice. We must, therefore, determine whether plaintiffs furnished any evidence of the medical standards for the locality from which the jury could properly find that defendant failed to provide the course of treatment which the law expected of him.

Defendant claims that Dr. John R. C. Carter, plaintiffs' sole medical expert, did not have the qualifications of an expert, and that it was error to permit his testimony to remain on the record, or at least the jury should have been cautioned to disregard or give little weight to it. He was permitted to testify as to the practice of surgery in Detroit and similar communities. Dr. Carter was graduated from Trinity Medical College, Toronto, Canada, and was admitted to practice medicine and surgery in Michigan in 1902. He spent two years at various places in the upper peninsula of Michigan; from there he went to Chicago, where he practiced for 6 or 8 months; he spent 6 months in Perth, N. D., 3 months in British East Africa, one year in Alliance, Neb., then considerable time in various places in Mexico. From there he went to Blue Hill, Neb., for about a year, and then he returned to Mexico for some time. Following that, he practiced at Ainsworth, Neb., for a year and a half, at Gordon and Sidney, Neb., for 6 months at each place; at Potter and other towns in Nebraska for 6 or 7 years; 5 years in Colorado; and some time in

Louisiana. In 1929, he returned to Michigan. After living in several communities, he finally settled in Ferndale, Michigan, in 1932. He testified that he never attended or witnessed any operation whatsoever in the city of Detroit or its vicinity; he was not acquainted with any doctors there, although he did know one physician with whom he once had a casual conversation; he never practiced, except as a consultant to some attorneys, and he had performed no operations for 10 or 12 years. Defendant's counsel did not raise the objection of lack of qualifications until after the witness had been permitted to state his opinions, but the incompetence was clearly brought out on cross-examination. The usual practice is to permit opposing counsel who challenges the witness' qualifications to cross-examine on this point before the witness is asked to state his opinions. *People* v. *Kimbrough,* 193 Mich. 330. The question of competency is for the court to determine (*Ives* v. *Leonard,* 50 Mich. 296; *People* v. *McQuaid,* 85 Mich. 123), and "he must decide within the limits of a fair discretion whether the experience of the supposed expert had been such as to make his opinion of any value." (COOLEY, J., in *McEwen* v. *Bigelow,* 40 Mich. 215). Also *People* v. *Kimbrough, supra.* Opinion evidence may not be given by one who has no knowledge or experience. *Jacobs* v. *Hagenbeck-Wallace Shows,* 198 Mich. 73 (L. R. A. 1918A, 504, 16 N. C. C. A. 535); *Gloeser* v. *Moore,* 284 Mich. 106. We have held that testimony of an osteopath could not be received as expert testimony of local practice without a showing that he knew the local practice. *Sima* v. *Wright,* 268 Mich. 352. In ruling on defendant's motion for directed verdict, the trial judge seemed satisfied that the witness had no knowledge of the medical standards in Detroit and similar communities and that this would disqualify him as an expert, but he

nevertheless concluded that the issue concerned the weight rather than the admissibility of the testimony. This is at variance with the principles stated herein. Because there is some doubt about whether the objection was timely and properly raised, and because the problem will not likely arise on retrial, we need not determine whether there was any reversible error in the refusal to strike the testimony or in the failure to instruct the jury that the opinions were entitled to little or no weight.

Defendant claims that the photograph of the scar on Mrs. Perri's abdomen was improperly received in evidence. It has been held that a photograph is admissible if it is a fair representation (*Davis* v. *City of Adrian,* 147 Mich. 300), and that the reception thereof is left largely to the discretion of the trial judge. *Rogers* v. *City of Detroit,* 289 Mich. 86. It is to be excluded unless the court is satisfied that it is accurate, and where the photograph is taken considerably long after the events in question, it must be shown that conditions have not changed. *Leidlein* v. *Meyer,* 95 Mich. 586; *Ness* v. *City of Escanaba,* 142 Mich. 404. The photograph was made after the trial was in progress and the testimony showed that the incision made by Dr. Tassie was lengthened by the second operation to repair the hernia, which was performed more than two years after the operation in question. Plaintiffs claim that the photograph was admissible because there was a question as to the length of the original incision, and that it was at least admissible to challenge on this point the credibility of all the medical witnesses, including their own witness, Dr. Thompson, except Dr. Carter. At the trial, plaintiffs' counsel stated:

"Our claim is that it shows the length as operated by Dr. Tassie, but not the condition in which he left it."

The court replied:

"I don't think it is admissible for that purpose. It couldn't be admissible to show the length at the time Dr. Tassie operated. I am inclined to think it is admissible."

Thus, the trial court was satisfied that the photograph was not a proper representation of the operation as originally performed, but nevertheless he admitted it for some unexplained reason. We think the photograph taken after the second operation does not portray within fair bounds of reliability the probable length of the original incision, and therefore it would not satisfactorily serve to explain the discrepancies in the testimony of the witnesses in this particular. Conditions had changed to such an extent since the operation by defendant that we do not believe the photograph admissible for any purpose. Its prejudicial effect upon the sensibilities and sympathies of the jurors cannot be overlooked. Under such circumstances, it is improper to exhibit the injured part of the body itself. *Carstens* v. *Hanselman*, 61 Mich. 426 (1 Am. St. Rep. 606); *Farrell* v. *Haze*, 157 Mich. 374.

As the other serious errors assigned will not likely arise on retrial, we decline to discuss them. The judgments in both cases are set aside, with costs of the consolidated case to defendant, and the cases are remanded for a new trial.

CHANDLER and WIEST, JJ., concurred with BUTZEL, J.

BUSHNELL, C. J. I am of the opinion that a new trial should be granted. For the reasons stated by Mr. Justice BUTZEL the trial court erred in refusing either to strike the testimony of Dr. Car-

ter or to instruct the jury that the opinion expressed by him was entitled to little or no weight. I do not agree, however, that the court erred in holding the photograph admissible.

This court said in *Pruner* v. *Railway,* 173 Mich. 146:

"In photographs there should be a substantial identity in the person, place, or thing photographed and that which the jury are to consider in the case. It is difficult, and often impossible, to obtain a photograph of the scene of the accident at or about the time of the accident, but, having in mind the object sought, the assisting of the jury by knowledge of the locality to judge the conduct of the parties with reference to the issue raised, the only practical rule would seem to be that the changes must not be such as to destroy the substantial identity. The changes should be carefully pointed out and brought to the jury's attention. With these safeguards, the subject must be left largely to the discretion of the trial judge, and, while in the instant case the court might very properly in his charge have called the jury's attention more particularly to the changes, still we cannot say that his failure so to do was prejudicial error under the circumstances of this case."

The admissibility of a photograph in evidence is largely within the discretion of the trial judge. *Amedeo* v. *Railway Co.,* 215 Mich. 37, 55. We have approved the use of photographs of the scene taken sometime after the accident in negligence cases. This was done in *Pearce* v. *Rodell,* 283 Mich. 19. See the instruction by the trial court as to the use of such photographs by a jury at page 28 of that opinion.

In *Davis* v. *City of Adrian,* 147 Mich. 300, the photograph of an ulcerated sore was held properly admitted where the jury had been instructed as to the consideration to be given to the accompanying testi-

mony. In this case the objection was made that the sore resulted from improper treatment rather than from the injury upon which the cause of action was based.

In *Beardslee* v. *Columbia Township,* 188 Pa. 496, 502 (41 Atl. 617, 68 Am. St. Rep. 883), the court said:

"The only practicable rule would seem to be that the changes must not be such as to destroy the substantial identity, and that the changes, whatever they are, must be carefully pointed out and brought to the jury's attention. This would have to be the course pursued if a view were allowed to the jury at the trial, and no other appears practicable in regard to plans, photographs or other substitutes for a view. With these safeguards the subject must be left largely to the discretion of the trial judge."

See, also, *Rogers* v. *City of Detroit,* 289 Mich. 86.

Counsel was informed, in the presence of the jury, that the picture was not admissible to show the length of the incision at the time defendant operated and the jury was aware that the photograph was taken after a second operation and during the trial of the case. The rights of the defendant were amply safeguarded by these statements of the court.

We are unable to hold that the admission of the photograph of the scar on Mrs. Perri's abdomen was an abuse of discretion.

I concur in the conclusion reached by Mr. Justice Butzel that the judgments in both cases should be set aside and they should be remanded for a new trial.

Sharpe, Potter, North, and McAllister JJ., concurred with Bushnell, C. J.