### NACCARATO v. GROB.

1. WORDS AND PHRASES—PHENYLKETONURIA.
   Phenylketonuria (PKU) is a childhood disease which begins at birth and will result in progressively severe mental retardation due to an inability of the body to tolerate protein.

2. WITNESSES—EXPERTS—COMPETENCY.
   Determination of the competency of expert witnesses to testify to the standard of medical care prevalent in a locality is within the purview of trial court and will not be disturbed on appeal unless clearly erroneous.

3. PHYSICIANS AND SURGEONS—MALPRACTICE—STANDARD OF CARE.
   The standard of care to be required of a particular defendant in a medical malpractice action is that treatment and care customarily practiced by the medical community in which the defendant practices, not necessarily that which is known, or should be known, by that community.

4. SAME—EXPERT WITNESSES—KNOWLEDGE OF LOCAL STANDARDS.
   A proffered expert witness who denies knowledge of the local standards of a specialized field of medical practice is disqualified from testifying as an expert.

5. APPEAL AND ERROR—MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT—EVIDENCE.
   Facts are taken in the light most favorable to the plaintiff on review of a trial court's order granting defendant's motion for judgment notwithstanding the verdict.

6. PHYSICIANS AND SURGEONS—MALPRACTICE—EXPERT WITNESSES.
   Nonresident expert medical witnesses may testify that what the defendant in a malpractice case had done was contrary to the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] [No material]
[2, 7] 31 Am Jur 2d, Expert and Opinion Evidence § 25.
[3, 6] 41 Am Jur, Physicians and Surgeons § 87.
[4] 41 Am Jur, Physicians and Surgeons § 90.
[8] 5 Am Jur 2d, Appeal and Error § 1010.

standards of care in a similar community if the expert is not familiar with the actual practice of the profession in the community in issue.

7. Same—Malpractice—Expert Witnesses—Competency.

Trial judge was not in error in holding plaintiff's expert witnesses incompetent to testify as to the standards of medical practice in the Detroit area where the witnesses practiced in Chicago and Los Angeles, and were not sufficiently familiar with Detroit area practices, and where it appeared by cross-examination and by testimony of defendant's experts that Detroit was not "similar" to the areas in which the experts practiced.

8. Costs—Malpractice.

No costs are awarded on appeal in malpractice case where judgment for defendant notwithstanding verdict for plaintiff is affirmed.

Appeal from Wayne, Bowles (George E.), J. Submitted Division 1 April 2, 1968, at Detroit. (Docket No. 2,068.) Decided June 26, 1968. Leave to appeal granted September 10, 1968. See 381 Mich 774.

Complaint by Nunzio Naccarato, as next friend of John Francis Naccarato, a minor, against Otto Grob and David Krevsky, for damages for medical malpractice. Verdict for plaintiff. Judgment for defendant notwithstanding the verdict. Plaintiff appeals. Affirmed.

*Davidson, Gotshall, Halsey, Kohl, Nelson, Secrest & Wardle,* for plaintiff.

*Moll, Desenberg, Purdy, Glover & Bayer,* for defendants.

Fitzgerald, J. Phenylketonuria (PKU) is a childhood disease which begins at birth and will result in progressively severe mental retardation due to an

inability of the body to tolerate protein. The sooner a diagnosis of PKU is made, and treatments begun, the higher the intelligence quotient (IQ) of the child will be. If it is not diagnosed, the IQ will progressively decline. This action is brought, on behalf of a child who suffered permanent mental retardation, against 2 pediatricians for their alleged malpractice in failing timely to diagnose PKU in the child. The trial court granted defendants' motion for a judgment notwithstanding the verdict,[1] overturning a jury verdict for plaintiff in the amount of $80,000, and plaintiff appeals. We are not concerned in this appeal with the medical wisdom of the 2 pediatricians, nor in the timetable of years which passed before the disease of the plaintiff was discovered and treatment begun. Rather, plaintiff presents an alleged error of the trial court on an evidentiary matter wherein the court found expert witnesses for the plaintiff to be incompetent to testify as to certain matters.

## 1. THE EXPERT WITNESSES.

Dr. David Hsia is a world-renowned expert on phenylketonuria and he practices medicine in Chicago, Illinois. He was called by the plaintiff and testified that commercial medicines and special dietary programs were available for children suffering from PKU throughout the period of time when the plaintiff child remained untreated. There was also testimony to the effect that tests for PKU were easy to make and routinely made in the hospitals of the nation.

The trial court was concerned with the testimony of Dr. Richard Koch, another recognized expert on PKU, who practices medicine and does research in

---

1 GCR 1963, 515.2.

the city of Los Angeles, California. His testimony concerned the dissemination of the knowledge of PKU throughout the nation, both to pediatricians and to hospitals, and the standard of care which should have been employed by Detroit physicians as it was in similar communities where large medical centers were located. It was his opinion that any certified pediatrician should have used the test for PKU during the time the plaintiff child was being examined by the defendants for his inability to perform mentally and physically as other normal children his age could perform.

Drs. Martmer, Wooley, and Adams were Detroit area doctors who were called by the defendants and generally testified that it was not the common practice for pediatricians in the Detroit metropolitan area to use the recognized tests for PKU during the time period in question, because the disease was so rare. Their testimony was to the effect that the defendants did not vary from the usual "standard of care" of pediatricians in the Detroit area. They did admit in various manners that most pediatricians knew of the disease and of the treatment then available for use.

In the written opinion of the trial court overturning the jury verdict, the court said that the testimony of the plaintiff's witnesses who did not practice medicine in Michigan could not be considered by the jury as worthy of belief regarding the standards of actual private practice of physicians in the Detroit area during the time period in question. Plaintiff believes that his witnesses could assume standards of physicians in the Detroit area would be comparable with any other metropolitan areas where large medical centers were engaged in PKU research.

## 2. PRELIMINARY CONSIDERATIONS.

Our first duty as an appellate court is to ask throughout our review of the decision of the trial court whether the court abused its discretion in adversely determining the competency of the expert witness on the basis of the testimony proffered. Such a determination is within the purview of the trial court, not the jury, and will not be disturbed on appeal unless clearly erroneous. See 8 ALR2d 772; *People* v. *Hawthorne* (1940), 293 Mich 15; *Perri* v. *Tassie* (1940), 293 Mich 464; *Accetola* v. *Hood* (1967), 7 Mich App 83. The plaintiff in a malpractice action must furnish evidence of medical standards for the locality in order to establish liability of a defendant for failure to provide the expected course of treatment. *Perri* v. *Tassie, supra.* The "standard of care" to be applied to the defendants' treatments is *not* necessarily that which *is* known, or *should be known* by the physicians in the community. Rather it is only that treatment and care customarily practiced by the medical community which formulates the standard to be applied to the particular defendant. *Zoterell* v. *Repp* (1915), 187 Mich 319; *Roberts* v. *Young* (1963), 369 Mich 133 (99 ALR 2d 1330). To show such standards, where the ordinary layman would lack experience with medical procedures followed by the defendant, the plaintiff may be required to produce expert testimony.[2] *Lince* v. *Monson* (1961), 363 Mich 135.

Therein lies the problem of the plaintiff in a malpractice case against a local physician. It becomes difficult, if not impossible, for the plaintiff to obtain

[2] If the proffered expert denies knowledge of the standards of a specialized field of medical practice he is disqualified from testifying as an expert. *Frazier* v. *Hurd* (1967), 6 Mich App 317, affirmed, *Frazier* v. *Hurd* (1968), 380 Mich 291.

the testimony of other local physicians who are loath to substitute their judgment for that of their colleagues, and are unwilling to indict the practices of their entire profession in the community.[3] The Supreme Court of this State gently recognized this problem of the plaintiff in the case of *Sampson* v. *Veenboer* (1931), 252 Mich 660, 667, wherein they state:

"At times it may become necessary to secure the expert testimony of one who resides some distance from the home of the defendant accused of malpractice, for it may be difficult to obtain a witness to testify against one who bears the very high professional reputation of the defendant. If it would always be necessary to secure an expert from the vicinity of the home of a defendant who might be the only practitioner there, it would be impossible to secure such testimony at all. What credence should be given to the expert's statements is another matter. That was the province of the jury."

Here, plaintiff sought the testimony of nonresident expert witnesses. Such witnesses in a malpractice case might testify that the defendant did what was contrary to the standards of care of physicians in a "similar" community to the one in issue, if the expert is not familiar with the actual practice of the profession in that area. *Sampson* v. *Veenboer, supra; Delahunt* v. *Finton* (1928), 244 Mich 226, 230; *Lince* v. *Monson, supra.* If the testimony of the expert witnesses is not allowed by the trial court, and the plaintiff offers nothing further as to the comparative behavior of the defendant physician and his local colleagues, then the plaintiff has not met his

---

[3] The so-called "conspiracy of silence". See note, 45 Minn L Rev 1019 (1961). For further critical comment on the subject see Prosser, Torts (3d ed), § 32 (pp 166–168).

burden and fails. *Delahunt* v. *Finton, supra.* Facts are taken in the light most favorable to the plaintiff on review of a trial court's order granting defendant's motion for judgment notwithstanding the verdict. *Wamser* v. *N. J. Westra & Sons, Inc.* (1967), 9 Mich App 89.

### 3. DECISION OF THE TRIAL COURT.

It was the opinion of the trial court that the expert witness was not competent or qualified to testify as to the actual practices of pediatricians in the Detroit area, so plaintiff was non-suited despite the jury decision in his favor. The basis for the decision was that Dr. Koch was required to make too many assumptions, which were contradicted by testimony of the Detroit area physicians, as to the standards in the Detroit area so that Detroit was shown not to be a "similar" community to Los Angeles despite Dr. Koch's belief that the existence of medical centers engaged in PKU research in both cities made them "similar".

The standards set by Los Angeles medical centers actively engaged in PKU research could not be applied to the Detroit area medical centers, according to the trial court, where testimony showed that these centers were not known by the general practitioner in the Detroit area to have been engaged in PKU research at this time. The trial court found that the experts, although familiar with the practice and standards in a similar urban community, were not sufficiently familiar with Detroit practices in light of the contradictory testimony. The requisite degree of familiarity with Detroit procedures was thus not shown by the plaintiff's witnesses, for the communities in question were not "similar".

The trial court also took judicial notice of the rarity of PKU in the time period involved and the gradual development of a test for PKU, which was not then widely known. This is a harder case and is unlike the situation in most malpractice actions, such as *Sampson, supra,* where the practice or treatment in question is for a common ailment, often treated and easily compared with the prevailing professional standard of care by a nonresident expert witness.

## 4. OPINION OF THIS COURT.

The disturbing factor in this case, which may demand a thorough review of this whole procedure,[4] is that both defendants, who are recognized specialists in the field of pediatrics, had knowledge of PKU, its symptoms, and the tests which are given to detect the existence of the disease throughout the period of time that plaintiff visited their offices. We appreciate the conclusion of the Ohio court of appeals in *Morgan* v. *Sheppard* (Ohio App 1963), 188 NE2d 808, that:

"Usual and customary methods generally employed by physicians and surgeons in the diagnosis, care and treatment of a patient, no matter how long such methods have continued to be employed, cannot avail to prove and establish as safe in law methods and conduct which are in fact negligent.

---

[4] Other States have reviewed the problem toward providing the plaintiff with assistance in breaking or avoiding the "conspiracy of silence". Nevada and Massachusetts employ statutes which permit the plaintiff to offer recognized medical treatises in substitution for the testimony of expert nonresident witnesses on the professional standard of care. Nev 1959 Rev Stat § 51.040; Mass Ann Laws (1954 Cum Supp), ch 233 § 79C. Wisconsin permits an out-of-state doctor to testify as to the care, treatment, examination, or condition of persons he has treated in the course of his practice. Wis Stat § 147.14(2)(a) (1959).

"Evidence of conformity to such usual and customary methods, however, may, and should, be considered by the jury, along with all of the other circumstances in the case, in determining whether or not the physician or surgeon exercised the degree of care required of him under the law."

However, the present case is not a situation where the standard of care of the defendant physician falls below the standard of reasonably prudent care.[5] Therefore, we feel constrained to urge some reconsideration of this issue at a more appropriate time. This case is not the proper vehicle for further discussion of the merits of the rigid "standard of care" test and the problems faced by a wronged plaintiff in breaking the "conspiracy of silence" in a case of alleged negligent behavior by a defendant physician.

We refer again to our decision in *Accetola* v. *Hood,* *supra,* in holding that there was no abuse of discretion by the trial court, requiring correction by this Court, in evaluating the competency of the expert witness under the prevailing law controlling such testimony. Competent cross-examination and the use of Detroit area physicians to counter the assumptions of Dr. Koch effectively showed that he was not familiar with the prevailing practice of pediatrics in the Detroit area, said area shown not to be "similar" to Los Angeles. One may not be pleased with the thoroughness of the PKU diagnostic procedures of Detroit area pediatricians during the time period in question, but it is the law of this State that a defendant physician is not to be held to a greater duty of practice than that customarily ex-

---

[5] *Washington Hospital Center* v. *Butler* (1967), 127 App DC 379 (384 F2d 331).

pected of his fellow physicians in the community.[6]
*Roberts* v. *Young, supra.*

Affirmed. No costs.

J. H. GILLIS, P. J., and McGREGOR, J., concurred.

[6] The Louisiana rule rejecting the defense of customary practice is derived from the case of *Favalora* v. *Aetna Casualty Company* (La App 1962), 144 So 2d 544, which reads: "To relieve a member of the medical profession from liability for injury to a patient on the ground that he followed a degree or standard of care practiced by others in the same locality is, in our opinion, unthinkable when the degree or standard of care in question is shown to constitute negligence because it fails to meet the test of reasonable care and diligence required of the medical profession." While this may be a preferable rule in some circumstances, we certainly do not find that the trial court abused his discretion by not applying the law of another State, regardless of its merits. See, also, *Hundley* v. *Martinez* (1967), 151 W Va 977 (158 SE2d 159), for West Virginia's modification of the "locality rule".